LIONEL R. GELINAS *v.* DONNA B. GELINAS
(4620)

BORDEN, DALY and BIELUCH, Js.

Argued January 6—decision released March 17, 1987

*M. Hatcher Norris,* with whom, on the brief, was *John D. Ritson,* for the appellant (defendant).

*Neil F. Murphy, Jr.,* for the appellee (plaintiff).

BORDEN, J. The defendant appeals from the judgment of the court denying her motion to open the financial orders incident to the judgment of dissolution of her marriage to the plaintiff. The dispositive issue of this appeal is whether the trial court's finding that the defendant had not established fraud was clearly erroneous. We find no error.

The parties were married in 1966. In April, 1983, the court dissolved their marriage. At that time, the court approved a separation agreement between the parties dated December 23, 1982. The plaintiff, who was represented by counsel, appeared at the hearing. The defendant had filed a pro se appearance. She did not appear at the hearing.

The separation agreement provided for support in the amount of $50 per week for the parties' minor child who was born in 1969, and for no periodic alimony. The family home and certain real estate in Nevada remained in their joint names, with provisions for subsequent sale and an equal division of the proceeds. The plaintiff retained commercial real estate in South Windsor, a boat, and certain securities, including his stock in his wholly owned machine tool corporation. The defendant was assigned furnishings and personalty in the home.

In August, 1984, the defendant moved to open the judgment on the following grounds: the plaintiff committed fraud in his financial affidavit presented to the court at the time of dissolution; the defendant's agreement to the financial settlement was obtained by fraud; and the trial court failed to determine that the agreement was fair and equitable. The court denied the motion. The defendant appealed, claiming (1) that the court's finding that there was no fraud is clearly erroneous, (2) that the defendant is not barred from opening the judgment by her lack of due diligence, and (3) that there is a substantial likelihood of a different result upon a new trial. We conclude that the court's finding of lack of fraud is not clearly erroneous. This conclusion is fatal to the defendant's appeal and renders it unnecessary to consider her other claims.

The court found the following facts. The plaintiff has a high school equivalency diploma, is a machinist, and

in 1971 started his machine tool business. The defendant has a high school education, worked throughout the term of the marriage, and is an administrator at United Technologies Research Center where she has worked for nineteen years. She has a responsible position which at the time of the dissolution carried an annual salary of $30,400. Both parties, the court found, are extremely intelligent, have good business sense and are at ease with numbers.

The court further found that the parties' marriage began to falter two years prior to the dissolution and that the cause of the marital difficulty was the defendant's infidelity. In November, 1982, after much discussion, the parties agreed to dissolve the marriage. This decision reflected the desires of the defendant more than the plaintiff. They made the financial agreement. The plaintiff engaged his corporation's attorney to proceed with the dissolution and to reduce their financial agreement to writing. The defendant read the agreement and the plaintiff's attorney carefully reviewed it with her before she signed it on December 23, 1982.

In February, 1983, the plaintiff left the family home in South Windsor and moved to Andover. As the time for the dissolution hearing approached, the plaintiff became increasingly upset and distraught. In April, 1983, ten days before the dissolution, the plaintiff convinced the defendant to attempt a reconciliation. The defendant was partially motivated by a desire to ease the plaintiff's mental anguish over the impending dissolution. The defendant moved to the plaintiff's new home in Andover, where they were living together as husband and wife on the date of the dissolution.

The court also found that approximately three days before the dissolution, the plaintiff's attorney telephoned him to obtain financial information for the affidavit to be filed with the court. This was the first time

that the plaintiff knew of such a requirement. The plaintiff answered his attorney's questions over the telephone from memory. A similar telephone call from the attorney to the defendant produced information for her financial affidavit. The parties thereafter went to the attorney's office together, signed their respective affidavits and went out to dinner together.[1] The parties stipulated that the defendant did not request a copy of the plaintiff's affidavit, nor was one furnished to her.

The defendant's affidavit indicated net weekly earnings of $377, and a net worth of $56,805. The plaintiff's affidavit indicated net weekly earnings of $1200, and a net worth of $665,960. The bulk of his net worth consisted of the value of his stock in the machine shop corporation, and in the value of the land which he owned and leased to the corporation.

As a result of the method by which the figures were obtained, the plaintiff's financial affidavit was erroneous in two significant respects. His actual net weekly income was approximately $375 more than the $1200 indicated in the affidavit. His actual net worth was approximately $277,000 more than the $665,960 indicated. The court also found that the plaintiff owned a boat which, on the affidavit, had an equity value of $45,000. The parties had, however, made improvements to the boat totalling $135,000, but these improvements did not reflect a corresponding increase in its value, and its actual increase in value resulting from the improvements was unknown. The court specifically found, however, that the real estate values assigned to the properties listed on the plaintiff's affidavit, which were the source of part of the understatement of the plaintiff's net worth, were the result of the parties' agreement. The court also found that despite the inac-

---

[1] Although the court did not make a finding in this regard, it it undisputed that the defendant knew of the dissolution hearing and chose not to attend.

curacies, the plaintiff believed the affidavit to be true, that he never perceived that either the defendant or the court would rely on the accuracy of the affidavit, and that he had no intent to deceive the defendant or the court. The court further found that the plaintiff was a reluctant participant in the dissolution, and that he and the defendant had arrived at their agreement months earlier.

With respect to the defendant, the court found that she did not rely on the affidavit, and that she did not see it until more than a year after the dissolution. The court also found that she was very familiar with the family's financial affairs, and that between 1970 and 1980 she engaged in friendly competition with their accountant in predicting the amount of their annual income tax. She knew of the capital outlays on the boat. The court further found that she had determined that the plaintiff should have the boat and his machine shop company because she felt badly that he was losing his wife and family. It also found that she knew what the family's assets were and took no steps to ascertain their fair value. She was specifically aware of the plaintiff's income, because she signed their 1982 federal income tax return two weeks prior to the dissolution. That return showed the plaintiff's salary from the corporation as $120,000. He also had $100,000 in rental income from the corporation. The court specifically found that the defendant's actions were motivated, not by misrepresentations of the plaintiff, but by her own feelings based on the role which she had played in bringing about the dissolution.

The court concluded that the plaintiff had not committed fraud. The court also concluded that the defendant had not exercised due diligence.

The defendant first claims that the court's finding that there was no fraud by the plaintiff is clearly erroneous. We disagree.

We first consider the defendant's claim in this respect that the original trial court at the time of the dissolution did not perform its obligation to make "reasonable inquiries . . . to ensure, as far as possible, that [a] reasonable [settlement had] been knowingly agreed upon." *Monroe* v. *Monroe,* 177 Conn. 173, 184, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979).[2] This argument is without avail. While that obligation of the court carries weight on a direct appeal from a judgment of dissolution, it does not help the defendant in this case in which she attempts to disturb the judgment by collateral attack. "[E]ven judicial failure to conduct a searching inquiry into the acceptability of a divorce settlement does not make the subsequent judgment of divorce vulnerable to collateral attack as a miscarriage of justice." Id.; *Jackson* v. *Jackson,* 2 Conn. App. 179, 188, 478 A.2d 1026, cert. denied, 194 Conn. 805, 478 A.2d 710 (1984). We also note that the defendant in oral argument before this court specifically disclaimed any claim of fraud or deception by the plaintiff on the court in 1983; see *Baker* v. *Baker,* 187 Conn. 315, 445 A.2d 912 (1982); *Casanova* v. *Casanova,* 166 Conn. 304, 348 A.2d 668 (1974); and relies solely on a claim of fraud as against her.

We therefore turn to the gist of the defendant's claim, namely, that the court clearly erred in failing to find that the plaintiff had committed fraud by nondisclosure. The defendant argues that she relied on representations of the plaintiff made during the course of their discussions leading to the agreement, that his

---

[2] A significant disparity, for example, between, on one hand, the plaintiff's income and net worth and, on the other hand, his support obligation of only fifty dollars per week, could well have triggered a more searching inquiry into the reasonableness of the agreement. We note from the record, however, that at the time of the hearing on the defendant's motion to open the judgment, the minor child of the parties was no longer living with the defendant and was living with the plaintiff.

business was doing poorly. She points to the plaintiff's testimony on cross-examination corroborating her testimony that he had told her that the business was having great difficulty, and to the fact that, unbeknownst to her and contemporaneously with the signing of the affidavits, the plaintiff's accountants had prepared a statement of his financial position indicating a net worth of approximately $297,500 more than was indicated on his financial affidavit. We conclude, nonetheless, that the finding of the trial court that the defendant failed to establish fraud is not clearly erroneous.

We have had occasion to summarize the law of fraudulent nondisclosure in the context of an uncontested marital dissolution case. Fraud involves deception practiced in order to induce another to act to her detriment, and which causes that detrimental action. *Jackson* v. *Jackson,* supra, 193. The four essential elements of fraud are (1) that a false representation of fact was made; (2) that the party making the representation knew it to be false; (3) that the representation was made to induce action by the other party; and (4) that the other party did so act to her detriment. Id. Fraud by nondisclosure, which expands on the first three of these four elements, involves the failure to make a full and fair disclosure of known facts connected with a matter about which a party has assumed to speak, under circumstances in which there is a duty to speak. Id., 194. A lack of full and fair disclosure of such facts must be accompanied by an intent or expectation that the other party will make or will continue in a mistake, in order to induce that other party to act to her detriment. Id. In a marital dissolution case, the requirement of a duty to speak is imposed by Practice Book § 463, requiring the exchange and filing of financial affidavits; *Jackson* v. *Jackson,* supra, 194; and by the nature of the marital relationship. Id., 188–89; see

also *Grayson* v. *Grayson,* 4 Conn. App. 275, 299–300, 494 A.2d 576 (1985) (*Borden, J.,* dissenting), appeal dismissed, 202 Conn. 221, 520 A.2d 225 (1987). A judgment will only be set aside on the basis of fraud, however, if the movant " ' "is not barred by any of the following restrictions: (1) There must have been no laches or unreasonable delay by the injured party after the fraud was discovered. (2) There must have been diligence . . . in trying to discover and expose the fraud. (3) There must be clear proof of the perjury or fraud. (4) There must be a substantial likelihood that the result of the new trial will be different." ' " *Jackson* v. *Jackson,* supra, 189, quoting *Jucker* v. *Jucker,* 190 Conn. 674, 677, 461 A.2d 1384 (1983).

The defendant's reliance on the fact that the plaintiff corroborated her testimony about the plaintiff's corporation's financial difficulties is unavailing. The plaintiff also testified that he thought that the company, which was involved with the aerospace industry, was in poor health because that industry was then going through a recession, the company's largest customer had cancelled many orders, and deliveries pursuant to its long-term contracts had been pushed forward into 1986 and 1987 by his customers. Moreover, the fact that the plaintiff's financial statement indicated a net worth of approximately $297,500 more than his financial affidavit adds little to the defendant's claim, because the trial court found in accordance with that claim that the plaintiff's financial affidavit understated his net worth by $277,000. The trial court also specifically found, however, that despite the inaccuracies in the affidavit the plaintiff believed it to be true and that he had no intent to deceive the defendant.

Furthermore, the court specifically found that the defendant did not rely in any way on the inaccurate affidavit, because she did not see it until long after the dissolution. Although the trial court made no specific

finding of lack of reliance by the defendant on the plaintiff's representations as to the financial ill health of his company, certain critical specific findings as to the motivations of the parties in connection with the dissolution action are inconsistent with, and implicitly reject, any such reliance. These findings are that the plaintiff was a reluctant participant in the dissolution, and that the defendant's actions were motivated, not by any misrepresentations of the plaintiff, but by her own feelings about herself and the role which her infidelity played in causing the dissolution.

We have fully reviewed the entire record in this case. We do not condone the cavalier attitude of the plaintiff toward his obligation to file an accurate financial affidavit with the court. Nor do we condone the manner in which his attorney at that time[3] prepared and filed the affidavits. This court has consistently recognized the need for a full and fair disclosure of information contained in a financial affidavit. *Niles* v. *Niles,* 9 Conn. App. 240, 251, 518 A.2d 132 (1986); *Grayson* v. *Grayson,* supra, 286. Furthermore, it is fundamental that copies of such affidavits be exchanged by the parties. See *Jackson* v. *Jackson,* supra, 188. We reiterate that "[t]he sworn financial statements of the parties under Practice Book§ 463 have great significance in domestic disputes." Id. Our review of the record makes clear, however, that the court's finding of lack of fraud is supported by the evidence, and we are not left with any definite and firm conviction that a mistake has been committed. *Buddenhagen* v. *Lugue,* 10 Conn. App. 41, 45, 521 A.2d 221 (1987). Thus, that finding is not clearly erroneous.

There is no error.

In this opinion the other judges concurred.

---

[3] The attorney who represented the plaintiff in this case, both at trial and on appeal, did not represent him in the original dissolution.