[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION TO STRIKE (#225)
The issue before the court in this motion is should the court grant defendants' motion to strike counts four through fifteen of plaintiffs' revised complaint?
The plaintiffs filed a revised complaint dated April 4, 1990 in fifteen counts. The first three counts, brought as a wrongful death action by Jadwiga Szymanski as executrix, allege negligence on the part of the three named defendants. Count one is directed at Hartford Hospital, count two is directed at Barbara Dowd and count three is directed at Mark Izard.
Counts four, five and six, brought as a wrongful death action, allege recklessness on the part of the three named defendants. Counts four, five and six are directed at Hartford Hospital, Dowd and Izard respectively.
The remaining nine counts are brought by Jadwiga Szymanski individually as wife and by decedent's children, Irene Szymanski Nadneja, Jozef Szymanski and Thaddeus Szymanski (Szymanski family) as co-plaintiffs. These counts arise out of the defendants' alleged cover-up of the alleged malpractice subsequent to decedent's death. Counts seven, eight and nine, directed at Hartford Hospital, Izard and Dowd respectively, allege intentional infliction of emotional distress. Counts ten, eleven and twelve directed at Hartford Hospital, Izard and Dowd respectively, allege intentional misrepresentation. Counts thirteen, fourteen and fifteen directed at Hartford Hospital, Izard and Dowd respectively, allege negligent misrepresentation.
All of the claims arise from the following facts alleged in plaintiffs' revised complaint. On April 2, 1988, the decedent Czeslaw Szymanski entered Hartford Hospital's Dialysis Unit to undergo hemodialysis treatment. When he was attached to the dialysis machine, nurse Barbara Dow, who was overseeing the treatment, allegedly turned off the alarms on the dialysis machine and left the room. While she was out of the room, it is alleged that the tube that connected the decedent to the machine slipped out of his arm and as a result the decedent bled to death.
It is further alleged that the actions of nurse Dowd in overseeing the treatment and Izard and Hartford Hospital's administration of the Dialysis Unit fell below the accepted medical standard so as to be negligent (counts one, two and three) or in the alternative, reckless (counts four, five and six).
In addition, it is alleged in counts seven through fifteen, brought by the Szymanski family, that the defendants told the Szymanski family that the decedent died of natural causes rather CT Page 32 than as a result of their alleged sub-standard conduct. The Szymanski family plaintiffs allege that this conduct on the part of Hartford Hospital rose to the level of outrageous conduct and is the basis for their claims of intentional infliction of emotional distress, intentional misrepresentation and negligent misrepresentation.
On June 14, 1990 the defendant Hartford Hospital filed a motion to strike and supporting memorandum attacking the fourth, seventh, tenth and thirteenth counts of the revised complaint on the grounds that they are legally insufficient. Defendant Dowd filed a motion to strike dated June 14, 1990 and has adopted the memorandum of defendant Hartford Hospital as it applies to the counts directed at her (counts five, nine, twelve and fifteen). Defendant Izard filed a motion to strike dated June 14, 1990 directed to counts six, eight, eleven and fourteen, along with a memorandum of law.
On August 1, 1990 plaintiffs filed a memorandum in opposition to the defendants' motion to strike.
 The purpose of a motion to strike is to "contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted . . . ." In ruling on a motion to strike, the court is limited to the facts alleged in the complaint . . . . The court must construe the facts in the complaint most favorably to the plaintiff . . . . (Citations omitted).
Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170
(1988).
However, a motion to strike ". . . does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." Mingachos v. C.B.S., 196 Conn. 91, 108 (1985).
 In a motion to strike "[t]he allegations are entitled to the same favorable construction as a trier would be required to give in admitting evidence under them . . . and if facts provable under the allegations would support a defense or cause of action, the . . . [motion to strike] must fail . . . We must examine the truth of all well pleaded facts, to determine whether the particular plaintiff under each count has standing to sue." (Citations omitted).
Alarm Applications Co. v. Simsbury Volunteer Fire Co., 179 Conn. 541
CT Page 33 545 (1980).
I. COUNTS FOUR FIVE AND SIX ALLEGING RECKLESS CONDUCT
In their memorandum in support of their motion to strike, defendants contend that counts four, five and six merely recite the same facts alleged in counts one, two and three as negligence and are merely renamed reckless conduct. It is further argued that simply adding the language that the defendants "knew or should have known" cannot turn a negligence claim into one for recklessness.
Counts four, five and six must be examined on their own to determine whether they sufficiently allege facts which would give rise to a cause of action for reckless conduct and to determine if the facts pled ". . . fairly [apprises] the adverse party of the state of facts which it is intended to prove." Buckman v. People Express, Inc., 205 Conn. 166, 173 (1987).
 The fact-based pleadings now in use can support in a single action previously incompatible theories, and there is no requirement that the plaintiff plead the legal effect of those facts . . . . Generally, if two theories are alleged in the same pleading, it is for the trier of fact to determine whether the plaintiff has provided both, neither, or but one of them. (Citation omitted).
Burns v. Koellmer, 11 Conn. App. 375, 386 (1987).
Therefore, since plaintiffs sufficiently allege the facts necessary to support a claim of recklessness in counts four, five and six it is of no consequence that many of the same facts were alleged in counts one, two and three to support a claim of negligence. In order to determine whether the plaintiffs' factual allegations are sufficient to support a claim, the court must focus on the definition of recklessness.
In addressing what constitutes reckless conduct, the Connecticut Supreme Court has stated:
 Recklessness is a state of consciousness with reference to the consequences of one's acts . . . . It is "more than negligence, more than gross negligence" . . . . The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to CT Page 34 avoid injury to them . . . . Wanton misconduct is reckless misconduct . . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action . . . . While we have attempted to draw definitional distinctions between the terms wilful, wanton or reckless, in practice the three terms have been treated as meaning the same thing. "The result is that "willful," "wanton," or "reckless" conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent . . . . It is at least clear . . . that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention. (Citations omitted).
Dubay v. Irish, 207 Conn. 518, 532-33 (1988).
In count five of the revised complaint, plaintiffs allege that nurse Dowd either ignored the alarms attached to the dialysis machine or shut the alarms off before she left the room. As a result of this, it is alleged that she either failed to heed the alarm when it went off or that because she shut the alarm off, it was impossible for her to know that the tube had been pulled from decedent's arm.
In sub-paragraphs (a) through (j) in counts four and six of the revised complaint, plaintiffs allege that defendants Hartford Hospital and Izard breached a wide variety of duties owed to the decedent such as: not providing constant surveillance of the decedent during dialysis as required by the Public Health Code of the State of Connecticut; failing to maintain its dialysis equipment; failing to properly train dialysis personnel; failing to discipline dialysis personnel when they knew or should have known that they were providing substandard medical treatment. Plaintiffs further allege that as a result of these failures "defendants knew or should have known that . . . serious bodily injury or death" was the likely result.
The facts alleged support an inference that defendants' conduct rose to the level of reckless as previously defined.
II. COUNTS SEVEN THROUGH FIFTEEN ALLEGING INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, INTENTIONAL MISREPRESENTATION AND NEGLIGENT MISREPRESENTATION AND THE DEFENDANT'S CLAIM THAT THESE CAUSES OF ACTION CT Page 35 ARE MISJOINED
A. COUNTS SEVEN, EIGHT AND NINE ALLEGING INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
Counts seven, eight and nine of plaintiffs' revised complaint directed at Hartford Hospital, Izard and Dowd respectively, are brought by decedent's wife Jadwiga Szymanski individually as wife and by other members of the Szymanski family. These counts allege that the intentional conduct of the defendant's death has caused them to suffer severe emotional distress.
 In oder for the plaintiff to prevail in a case for liability under . . . [the intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. (Citations omitted).
Petyan v. Ellis, 200 Conn. 243, 253 (1986).
In their revised complaint, plaintiffs allege that the named defendants or their agents told the plaintiffs that the decedent died of natural causes knowing that this information was false. Further it is alleged that the named defendants or their agents assured the plaintiffs that nurse Dowd had only left the decedent unattended for a few minutes when defendants knew or should have known that this information was false. Plaintiffs allege that this conduct was extreme and outrageous and that the defendants knew or should have known that this conduct was likely to cause emotional distress to the plaintiffs. Plaintiffs further allege that as a result of this extreme and outrageous conduct they have suffered and will continue to suffer severe emotional distress.
Therefore, the plaintiffs allege sufficient facts to establish a cause of action for the intentional infliction of emotional distress as outlined above.
In their brief, defendants contend that as a matter of law defendants' conduct cannot be considered extreme and outrageous.
The question of whether an actor's conduct is CT Page 36 sufficiently extreme and outrageous to impose liability is one for the jury to decide. "where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." (Citations omitted).
Brown v. Ellis, 40 Conn. Sup. 165, 167-68 (1984).
It is possible under the alleged facts for "reasonable men to differ", Id., as to whether or not defendants' conduct rose to the level of being extreme and outrageous. The jury must make a determination of whether in this particular case defendants' conduct did in fact rise to that level.
B. COUNTS TEN, ELEVEN AND TWELVE ALLEGING INTENTIONAL MISREPRESENTATION AND COUNTS THIRTEEN, FOURTEEN AND FIFTEEN ALLEGING NEGLIGENT MISREPRESENTATION
The next six counts of plaintiffs' revised complaint allege intentional and negligent misrepresentation and/or fraud on the part of the three named defendants. The basis of these claims is: that defendants deliberately and/or negligently misrepresented to the plaintiffs that decedent died of natural causes; that the defendants intended that plaintiffs rely on these false representations; that plaintiffs did in fact rely on these representations to their detriment by not obtaining an autopsy to determine the cause of death; that two weeks after the defendants' false representations plaintiffs began to discover the true nature of decedent's death; and, that as a direct result thereof, the plaintiffs have suffered emotional distress.
"The four essential elements of fraud are (1) that a false representation of fact was made; (2) that the party making the representations knew it to be false; (3) that the representation was made to induce action by the other party; and (4) that the other party did so act to her detriment." Gelinas v. Gelinas,10 Conn. App. 167, 173 (1987).
The plaintiffs have alleged sufficient facts to support a claim for intentional misrepresentation.
C. COUNTS THIRTEEN, FOURTEEN AND FIFTEEN ALLEGING NEGLIGENT MISREPRESENTATION.
The Connecticut Supreme Court has held that a plaintiff may recover for unintentionally caused emotional distress if "the defendant, or its agents or servants, should have realized that CT Page 37 its conduct involved an unreasonable risk of causing the distress, and from the facts known to it, or its agents, should have realized that the distress, if it were caused, might result in illness or bodily harm. Montimeri v. Southern New England,75 Conn. 337, 341 (1978). See also, Urban v. Hartford Gas Co.,139 Conn. 301, 307 (1952).
D. DEFENDANTS' CLAIM THAT THE CAUSES OF ACTION ARE MISJOINED.
"Whenever a party wishes to contest . . . (4) the joining of two or more causes of action which cannot properly be nited in one complaint, whether the same be stated in one or more counts . . . that party may do so by filing a motion to strike the contested pleading or part thereof." Conn. Practice Bk. 152.
"In any civil action the plaintiff may include in his complaint . . . causes of action . . . but if several causes of action are united in the same complaint, they shall all be brought to recover, either . . . (7) upon claims, . . . in tort . . . arising out of the same transaction or transactions connected with the same subject of action." Conn. Practice Bk. 133. "Transactions connected with the same subject of action within the meaning of subdivision (7) of 133, may include any transactions which grew out of the subject matter in regard to which the controversy has arisen ; as for instance, the failure of a bailee to use the goods bailed for the purpose agreed, also an in jury to them by his fault or neglect . . . ." Conn. Practice Bk. 134.
 "A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief" . . . . "A right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitute the cause of action." (Citations omitted).
Hall v. Burns, 213 Conn. 446, 484 n. 9 (1990).
Although counts seven, eight and nine alleging intentional infliction of emotional distress and counts nine through fifteen alleging intentional and negligent misrepresentation, brought by the Szymanski family, allege sufficient facts to state a claim upon which relief can be granted, they do not arise out of the same transaction and occurrence as counts one through six and CT Page 38 therefore, the defendants argue, are not properly joined. Counts one through six are a wrongful death action arising out of alleged misconduct directed at the decedent. The remaining counts arose subsequent to the alleged malpractice as a result of alleged conduct that was directed at the Szymanski family.
III. ADDITIONAL CLAIMS MADE BY DEFENDANTS IN SUPPORT OF THEIR MOTION TO STRIKE.
In their memorandum in support of their motion to strike, defendants contend that the case of Maloney v. Conroy, 208 Conn. 392
(1988), is controlling in the present case. In essence, defendants contend that plaintiffs' claim of intentional infliction of emotional distress is an outgrowth of the alleged malpractice. As such, it is defendants' contention that what plaintiffs are really seeking to recover is bystander emotional distress which is specifically denied by Maloney. Id. at 402.
The plaintiffs specifically allege in their claim of intentional infliction of emotional distress that the "extreme and outrageous conduct", see Petyan v. Ellis, supra at 253, giving rise to the claim was the defendants' alleged cover-up and subsequent misrepresentation of what actually happened and not the alleged malpractice. Therefore, Maloney has no bearing on the present case.
In their memorandum, defendants claim that Conn. Gen. Stat.52-555 (rev'd to 1989) entitled Actions for injuries resulting in death, provides that only an executor or administrator can bring a "wrongful death" action. Therefore, plaintiff Szymanski family is barred from bringing their action for intentional infliction of emotional distress.
It has already been established that the plaintiffs Szymanski family is not bringing a "wrongful death" action. In their pleadings they clearly allege that the basis of their intentional infliction of emotional distress and misrepresentation actions is defendants' alleged cover-up of the circumstances surrounding decedent's death. Therefore, the requirement that only an executor or administrator can bring a wrongful death action does not apply when the cause of action being brought arises out of an alleged breach of duty owed to the plaintiffs subsequent to the alleged wrongful death action.
Defendants move to strike counts 9-15 pursuant to Conn. Practice Bk. 198, on the ground that plaintiffs are misjoined as parties because their claim for intentional infliction of emotional distress does not arise out of the same transaction or occurrence as the wrongful death action. In their memorandum defendants intertwine arguments that both the plaintiffs and the CT Page 39 claims are misjoined. Therefore, both issues will be discussed here.
Conn. Practice Bk. 84 states:
 "All persons may be joined in one action as plaintiffs in whom any right of relief in respect to or arising out of the same transaction or series of transactions is alleged to exist either jointly or severally, is such persons brought separate actions, any common question of law or fact would arise; . . . ." Id.
"In any civil action the plaintiff may include in his complaint . . . causes of action . . . but if several causes of action are united in the same complaint, they shall all be brought to recover, either . . . (7) upon claims, . . . in tort . . . arising out of the same transaction or transactions connected with the same subject of action." Conn. Practice Bk. 133. "Transaction connected with the same subject of action within the meaning of subdivision (7) of 133, may include any transactions which grew out of the subject matter in regard to which the controversy has arisen; as for instance, the failure of a bailee to use the goods bailed for the purpose agreed, also an injury to them by his fault or neglect . . . ." Conn. Practice Bk. 134.
"'A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief' . . . `A right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitute the cause of action."' (Citations omitted). Hall v. Burns, 213 Conn. 446,484 n. 9 (1990).
Plaintiffs claim for intentional infliction of emotional distress arise from the same set of facts, and/or it grew out of the subject matter, that gave rise to the wrongful death action. This is true even though the specific facts that give rise to the respective claims did not occur simultaneously.
Defendants further contend that if these claims are brought together then "the potential of extreme prejudice to the defendant from the joinder of the respective plaintiffs is severe. A finding of malpractice by defendants in the care and treatment of the decedent may unduly influence a jury on the separate issues of intentional infliction of emotional distress CT Page 40
Conn. Practice Bk. 84 states that joinder of plaintiffs is permitted unless ". . . it would appear that such joinder might embarrass or delay the trial of the action . . . ." Id.
In addressing the issue of joinder of parties and claims, one superior court judge has said, "[g]ranted that our rules regarding joinder are not jurisdictional and inflexible; and granted that some exercise of discretion is not only permissible but required; nonetheless, the discretion involved must be soundly exercised." State of Connecticut v. Exxon Corporation, et al, 2 CSCR 63, 64 (November 25, 1986, Noren, J.) In that case the court denied joinder of claims against four defendant oil companies, who acting independently and not in cooperation or collusion, allegedly violated the same provisions of the Connecticut Anti-Trust Act. Id. at 64. The court, citing both Conn. Practice Bk. 134 addressing joinder of claims and 198 addressing misjoinder of parties, went on to say, "[b]ased upon our statutes, rules and precedents, in exercising its discretion, the court should invoke and attempt to implement workable, flexible but predictable procedures when misjoinder is claimed. Absent some real threat of harm to the plaintiff or gross imposition upon the court . . . when different defendants are involved, the relevent consideration appears to be the transactional theory of 134. Connecticut Practice Book." (Citations omitted). Id.
This court has taken into account all factors to determine whether in this situation joinder of parties and the causes of action would result in a real threat of harm. This court cannot find such a real threat of harm.
The motions to strike are therefore denied.
CLARK, J.