[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The marriage of the parties was dissolved on October 29, 1991 when an agreement they had entered into that day was made an order of the court. Beginning shortly thereafter and continuing through 1994, the parties were frequently in litigation over the failure of the defendant, Mr. Medina, to pay the weekly alimony which he had agreed to and which had been part of the court's order at the time of dissolution. That order required him to pay the plaintiff, now known as Loretta Moore, $150 per week as alimony and $62 per week toward the cost of her health insurance. On divers dates between October 17, 1995 and January 26, 1996 this court heard evidence and argument on two of Ms. Moore's contempt motions, filed on March 24, 1994 (#131) and December 2, 1994 (#143).[1]
At the same time the court heard Mr. Medina's motion to open and set aside the judgment (#135) based on the claim that "the Plaintiff grossly underreported her gross and net income amounts on the financial affidavit" which she filed at the time of the parties' dissolution.
Motion to Open and Set Aside the Judgment
The Appellate Court, in Gelinas v. Gelinas, 10 Conn. App. 167,173-74 (1987), summarized the law of fraudulent non-disclosure in the context of an uncontested marital dissolution case:
 Fraud involves deception practiced in order to induce another to act to her detriment, and which causes that detrimental action. . . .The four essential elements of fraud are (1) that a false representation of fact is made; (2) that the party CT Page 4405-K making the representation knew it to be false; (3) that the representation was made to induce action by the other party; (4) that the other party did so act to her detriment. . . .Fraud by nondisclosure, which expands on the first three of these four elements, involves the failure to make a full and fair disclosure of known facts connected with the matter about which a party has assumed to speak under circumstances in which there is a duty to speak. . . .A lack of full and fair disclosure of such facts must be accompanied by an intent or expectation that the other party will make or will continue in a mistake, in order to induce that party to act to her detriment. . . .
Mr. Medina's claim of fraudulent nondisclosure, as stated in the affidavit which accompanied his motion to open and set aside the judgment, is quite specific. In paragraph 4 of that affidavit he states that (he) "was induced to enter into the aforementioned agreement by the plaintiff's representations on her income contained in her financial affidavit filed with this court on or about October 29, 1991." The court concludes from the evidence that Ms. Moore's financial affidavit of October 29, 1991 did understate her income from her housecleaning business and, based on the size of the discrepancy between her actual business income and the business income reported, the court concludes that her understatement was deliberate. Ms Moore's gross revenue from her business in 1991 was in the neighborhood of $2,500 per week, according to her own testimony. From that amount she had to pay salaries to the women who assisted her in her business and make some relatively small expenditures weekly for supplies and gas, leaving her a net income from her business, before taxes, of approximately $1,300 each week. On her financial affidavit submitted on the date of the divorce she reported gross earnings from principal employment, before taxes, of only $670.
Mr. Medina's problem, however, is the same as the problem of the defendant in Gelinas; viz., based on his own testimony, he "did not rely in any way on the inaccurate affidavit, because (he) did not see it until long after the dissolution" Id., 174. Mr. Medina testified that on October 29, 1991 he never saw Ms. Moore's affidavit; in fact, he never saw it until the spring of 1993 when he retrieved his file from the attorney who represented him at the time of the dissolution. He testified CT Page 4405-L that not only did he not see the financial affidavit Ms. Moore filed on October 29, 1991, but that he did not see any of the other financial affidavits she filed while the case was pending prior to judgment. Furthermore, he testified that he knew from having lived with Ms. Moore for many years what her income was from her housecleaning business. Mr. Medina testified that he entered into the agreement upon which the dissolution was based because of pressure brought to bear upon him by his attorney, who, he claimed, told him that the trial judge had stated that, if Mr. Medina did not agree, he (Mr. Medina) would pay alimony for Ms. Moore's lifetime. This court does not credit that testimony of Mr. Medina. Rather, it seems more likely that the reason he made the agreement was that given by his counsel in closing argument in this hearing; viz., that he was exposed to an unfavorable disposition because he had been caught lying in an earlier proceeding in the case.
Because Mr. Medina did not rely upon Ms. Moore's false affidavit in entering into the agreement on October 29, 1991, his motion to open and set aside the judgment based on her fraudulent nondisclosure of income is denied.
The Contempt Motions
The parties stipulated through counsel that as of January 26, 1996 Mr. Medina was in arrears to Ms. Moore in the amount of $12,014.78. That arrearage had accumulated over an approximately two-year period. Thus, Mr. Medina's non-compliance with the court's prior orders has been established, and the burden is on him to show an inability to comply. Bunche v. Bunche, 36 Conn. App. 322,325 (1994).
Other than his own conclusory and self-serving testimony to the effect that his landscaping business had declined substantially from the time of his divorce, Mr. Medina's only evidence as to his inability to comply with the court's order was a group of invoices for work done in 1995. These invoices, which totalled almost $19,500, essentially covered the period from March through June of 1995. In addition, the court notes an unexplained gap in the invoices from #22380 to #22502. On the last day of the hearing, January 26, 1996, Mr. Medina offered another set of invoices covering the period from June to October of 1995 but, when objection was made to their introduction, withdrew his offer. No evidence was offered as to Mr. Medina's income in 1994. The court finds the evidence offered by Mr. CT Page 4405-M Medina to excuse his non-compliance with the court's order insufficient to establish his inability to do so.
Moreover, the court believes that it may take notice of the other evidence in the file that indicates a wilfulness on Mr. Medina's part when it comes to paying the alimony ordered on October 29, 1991. Arrearages began to appear as early as February 1992, and the file is replete with contempt motions and remedial orders, including an escrow of Mr. Medina's business revenues and orders for payment of counsel fees. Indeed, his failure to comply with a remedial order entered on November 7, 1994, with Mr. Medina's agreement, is the subject of one of the contempt motions heard by this court. The court notes further that, shortly before the dissolution, Mr. Medina was incarcerated for three days for failure to comply with pendente lite orders, and that he complied with the orders of the court only after his incarceration.
Mr. Medina testified that he presently services 75% of the same customers he was servicing in 1991, and that all of his personal household bills were current at the time of the hearing. Mr. Medina's financial problems, in particular his problems arising out of nonpayment of taxes due to the state and federal government, are problems of his own making.
Based on all of the above evidence, the court finds that Mr. Medina's failure to comply with the order of the court that he pay Ms. Moore $212 weekly as alimony and a contribution to her health insurance and that he make certain payments to satisfy the arrearage existing on November 7, 1994 was wilful and, therefore, a contempt of the court's order.
Ms. Moore has requested that Mr. Medina be incarcerated for his failure to comply with the court's order. The court believes, however, that in fashioning remedial orders it may take into consideration her own conduct in this case. The court has already found that Ms. Moore deliberately understated her income on the financial affidavit she submitted at the time of the dissolution, and the court does not consider that imposing the most drastic sanction for Mr. Medina's non-compliance is at this time an appropriate remedy.
Moreover, it is not obvious from a review of Mr. Medina's current financial circumstances how he would have the ability to purge himself of a contempt which required him to pay a CT Page 4405-N substantial lump-sum towards satisfaction of the existing arrearage.
Therefore, the court will enter the following remedial orders for the contempt it has found:
1. In addition to the weekly payments due to the plaintiff under the court's judgment of October 29, 1991, the defendant shall pay her $75 weekly towards the arrearage stipulated and found to exist as of January 26, 1996 and toward a current arrearage figure submitted by counsel pursuant to paragraph 4, below.
2. The additional payments required by paragraph 1 hereof shall continue until the arrearage found to exist has been completely satisfied, and, if that arrearage has not been satisfied by October 29, 1998, when the plaintiff's alimony payments under the judgment are to terminate, the defendant shall continue to pay on the arrearage existing on that date in the amount of $225 weekly until that arrearage is completely paid.
3. Pursuant to § 46b-87, C.G.S., and considering the criteria of § 46b-62, C.G.S., the defendant shall pay by way of counsel fees to the plaintiff $5,000, $1,000 of which shall be paid by July 10, 1996. The remainder shall be paid in full by June 30, 1997.
4. Within two weeks of the date of this memorandum counsel for the parties shall submit to the court a stipulation as to the arrearage due as of this date, and the court shall find that such stipulated arrearage is due and payable by the defendant to the plaintiff. The court retains jurisdiction to resolve any disputes between the parties as to the amount of the arrearage which has accrued since January 26, 1996.
Should the defendant continue in his course of contumacious conduct, the court will consider the more draconian remedies available to it, including incarceration.
SHORTALL, J.