[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I. HISTORY OF THE CASES
The above-captioned matters each arise out of petitions filed by the State on behalf of a minor child of the petitioner and the respondent.
DN50364 involved a support petition dated September 23, 1989 filed by the State on behalf of the petitioner which sought, interalia, current and past due support for the parties' minor child Corey Holmes, born December 11, 1988. Respondent had previously executed an acknowledgement of paternity which, together with petitioner's affirmation of paternity, was filed with the court on May 23, 1989, thus constituting a judgment of paternity pursuant to § 46b-172 (a), C.G.S. On September 11, 1989 judgment was entered on the support petition (Sullivan, F.S.M.) which ordered respondent to pay $104.39 weekly current support for said child and $10.61 per week on past due support to the State of Connecticut in the amount of $3,574.63 as of September 14, 1989. At that hearing respondent was represented by counsel. On September 19, 1989, said order appears to have been suspended by Magistrate Sullivan as it was alleged in respondent's Motion For Modification that the parties were residing together and an arrearage only order of $30.00 per week was entered on the arrearage previously found. On May 6, 1991, by agreement of the parties, the court (Lifshitz, F.S.M.) reinstated the current order and increased the arrearage payment to $40.00 per week finding an arrearage due to the State in the amount of $555.24 as of April 18, 1991.
DN59674 involved a paternity petition dated May 26, 1992 filed by the State on behalf of the petitioner seeking a finding that respondent was the father of her minor child, Taylor Turney, who was born on August 17, 1991. On August 03, 1992 a judgment of paternity was entered (Ginsberg, F.S.M.) by stipulation of the parties and the matter was continued to August 10, 1992 for financial orders and for consolidation with DN50364. The transcript from that hearing contains the statement by Assistant Attorney General Blanchette that "the parties have reached agreement as far as the amount to be paid back." (See respondent's Exhibit 1, page 5). The transcript also indicates that the court granted the State's Motion to Consolidate "to the extent that it is filed". On August 10, 1992, the date to which the matter was continued, the State and respondent presented an oral agreement to the court (Ginsberg, F.S.M.), stating that the petitioner and respondent were residing together. The court, CT Page 9925 therefore, entered no current order of support, but, by agreement of the parties, found an arrearage due to the State in the amount of $15,706.24 as of August 10, 1992 and ordered respondent to pay $40.00 per week on said arrearage. The matter was further continued to August 31, 1992 for the filing of the Motion to Consolidate, the order for which was signed on August 31, 1992.
On February 26, 1996, the court (Lifshitz, F.S.M.). acting on a Motion filed by support enforcement, entered an unallocated order of current support for the two minor children of $188.00 per week finding that it was in accordance with the Connecticut Child-Support Guidelines. No arrearage finding was made as the respondent disagreed with the arrearage claimed by support enforcement to be due and owing.
On February 29, 1996, three years and seven months after the arrearage finding of August 10, 1992, respondent filed a"Motion To Re-Open", which this court will interpret as a Motion To Open, seeking to vacate that finding. This court conducted hearings on said Motion on November 10, 1997, March 2, 1998 and April 12, 1998 on which date the hearings were terminated and a briefing schedule was agreed to and ordered by the court.
In reaching its decision, the court has carefully considered the testimony of all witnesses and the oral arguments and argument ments on brief offered by counsel. The court has reviewed in detail all exhibits submitted by the parties and has read the cases cited by the parties in their briefs.
 II RESPONDENT'S CLAIMS
Respondent argues that a clerical or mathematical error was committed at the hearing on August 10, 1992 which resulted in an erroneous arrearage finding of $15,706.24, however respondent must concede that it was not an error of the clerk or Magistrate. Citing such cases as Blake v. Blake, 211 Conn. 485, State v.Nardini, 187 Conn. 109 (1982); and Bottass v. Bottass,40 Conn. App. 733 (1996) as the authority for doing so respondent urges the court to correct an error merely "clerical" in nature. However, the errors which gave rise to the cited cases each involved a failure to preserve or correctly represent in the record the actual decision of the court (see Bottass, supra, at page 739). There was no such error in the instant case; Magistrate Ginsberg accepted and ordered exactly what the parties agreed to and the clerk properly entered that agreement and order CT Page 9926 into the file.
Respondent, however, also argues that in compiling the figures which were submitted to the Magistrate on August 10, 1992, the State and the respondent made a mutual mistake and that the mutuality of that error, if proven to be such, ought to provide the court with sufficient grounds to open the arrearage judgment and vacate the finding. As legal precedent for this argument, respondent cites Hill v. Hill, 39 Conn. App. 258
(1995). Respondent argues that the holding therein coupled with the evidence introduced at trial mandates that the court grant his Motion.
 III STATE'S ARGUMENT
The State, in opposition to respondent's Motion, asserts, and correctly so, that the arrearage finding of August 10, 1992 was entered by agreement of the parties after prolonged negotiations. Respondent was even granted a so called "cooling off" period when, after agreement was reached on August 3, 1992, the case was continued for another week at which time the agreement was offerred to the court and accepted by the court. The State argues that a single allegation of error is not sufficient to open a judgment entered nearly four years prior to the filing of the Motion to Open the same and that a bold allegation of "clerical error" without more is mere speculation. The State also objects to the Motion on the grounds that it is untimely within the provisions of § 52-212a, C.G.S. and § 326 of the Practice Book (now § 17-4), yet that objection was advanced in a pre-trial brief dated July 17, 1996, some five months subsequent to the filing of the Motion, and was not mentioned during three trial dates of testimony. There was no formal pleading filed by the State attacking the timliness of respondent's Motion. However, if a mutual mistake were made of such a magnitude to mandate an opening of the judgment the four month restriction provided in the cited statutory and procedural sections is not applicable. Said restriction is also not applicable if fraud, accident, duress or want of jurisdiction is alleged and proven. Rutkin, Effron and Hogan, Conn. Practice Series,Family Law and Practice, Vol. 8, § 51.5; Jucker v.Jucker, 190 Conn. 674 (1983); Gelinas v. Gelinas,10 Conn. App. 167 (1987); Broaca v. Broaca, 181 Conn. 463; Misinonilev. Misinonile, 190 Conn. 132 (1983); Jenks v. Jenks,34 Conn. App. 462 (1995), reversed on other grounds, 232 Conn. 750 (1995).
The State argues that the holding in Hill, supra, does not CT Page 9927 apply to the facts of this case as no attempt to falsify documents or mislead the respondent or the court was alleged or proven.
 IV ISSUE TO BE DECIDED
The issue presented by the facts of this case as adduced at trial and refined by the various exhibits is whether or not a mistake was made by the parties in compiling the arrearage figure submitted by them to the court on August 10, 1992 and whether or not the mutuality of such mistake, if any, was of such severity as to mandate that the arrearage finding be opened and vacated.
 V ANALYSIS OF THE FACTS
In analyzing the facts, we begin with the manner in which the arrearage figure of $15,706.24 was determined on August 3, and August 10, 1992. It is clear from the testimony of Mr. Fournier, an investigator for the Department of Social Services (D.S.S.), and a review of the court testimony sheet (State's Exhibit A) that the past due support owed by the respondent for both Corey and Taylor was included in the calculation. The amount due on Corey's account was determined to be $9,267.96 which was based upon the reinstated support order of $104.39 per week for a period of 66 weeks from May 6, 1991 (the date of reinstatement) to August 10, 1992 adding thereto any pre-existing arrearage. The past due support due to the State on account of Taylor was determined to be $6,438.28 which was based on respondent's ability to pay from Taylor's date of birth August 17, 1991 to August 10, 1992, a period of one year which would reflect an ability to pay $123.80 per week. The sum of $9,267.96 and $6,438.29 equals $15,706.24 which was the arrearage submitted by the parties to Magistrate Ginsberg on August 10, 1992 resulting the finding challenged by respondent.
 A. AS TO THE CHILD COREY
In his first appearance on the stand, Mr. Fournier, relying on his best recollection, his review of the court testimony sheet (State's Exhibit A) and his review of a computer printout of the history of Corey's account (respondent's Exhibit 4) testified that any payments made by respondent between May 6, 1991 and August 10, 1992 certainly would have been reflected as a credit in the calculations. The court, however, requested that support CT Page 9928 enforcement conduct an audit of Corey's account from April 18, 1991 (the date as of which an arrearage was found of $555.24) to August 10, 1992. Subsequently, Mr. Guzzardi, a support enforcement officer, took the stand whereupon respondent submitted the results of that audit (respondent's Exhibit 5) which reflected $6,219.63 paid by the respondent between May 6, 1991 and August 10, 1992 and which reflected a total amount due for said period, including the pre-existing arrearage of $555.24, of $7,444.98 not $9,267.96 as originally claimed. When the confirmed payments of $6,219.63 are deducted from the $7,444.98 which was due, the resultant past due support in Corey's account due to the State as of August 10, 1992 was $1,225.35 not $9,267.96 as submitted to the court, a difference of $8,042.61. On rebuttal, Mr. Fournier conceded that the original figure of $9,267.96 should not have been that high. There can be no question, based upon uncontraverted testimony and documentary evidence, that a substantial error was made in the computations submitted to the court on Corey's account.
 B. AS TO THE CHILD TAYLOR
As indicated, Mr. Fournier testified that the amount of past due support claimed to be due to the State on the account of Taylor, from her date of birth (August 17, 1991) to August 10, 1992, a period of one year, was $6,438.28 which amounts to $123.81 per week. The court testimony sheet (State's Exhibit A) indicates said figure was determined based upon respondent's "ability to pay". That would mean that once the current order on Corey's account of $104.39 was added, respondent had an ability to pay for the two children the amount of $228.20. Under the applicable guidelines such a weekly support order for two minor children would be based on a net income of $560.00 per week. At the hearing on August 10, 1992 respondent stated that his gross income was $660.00 and that his net was $390.00 which is somewhat supported by his financial affidavit dated August 10, 1992 although he seemed to have the terms "gross" and "net" confused. If, as the State suggests in its "Addendum To State of Connecticut's Final Memorandum" dated June 2, 1998, the court accepts a gross weekly income of $660.00, the amount of support attributable to Taylor would be between $83.00 and $86.00 per week, not $123.81 (using 28% for federal withholding). Using respondent's claimed net weekly income of $390.00, the guideline amount for one child would be $103.00-$104.00 per week — the amount of the order already in place for the child Corey. It is clear, therefore, that not only did the State fail to consider CT Page 9929 respondent's payments on Corey's order in the calculations, the very existence of Corey's order was not considered in determining respondent's ability to pay for the purposes of determining past due support on Taylor's account.
Giving the State the benefit of the doubt, the amount of past due support on Taylor's account should have been $4,472.00 (52 weeks at $86.00 per week) and not $6,438.28 as determined by D.S.S. in its calculations submitted by the court — a difference of $1,966.28. There can be no question, therefore, that the substantial error made in the computations for Corey permeated the calculations for Taylor.
 VI LEGAL ANALYSIS
The question now to be decided is whether or not the errors in calculations made which resulted in the arrearage finding on August 10, 1992 were of such severity and of such mutuality as to mandate opening that finding and vacating the same.
In determining the answer, the case of Hill v. Hill,39 Conn. App. 258 (1995) is instructive. In that case the defendant in a dissolution case overstated his withholding in his financial affidated, thus resulting in the trial court ordering a child support order significantly lower than that which the guidelines would mandate had the correct withholding been stated. A subsequent trial court corrected the withholding and entered a substantially higher support order even though the Motion requesting such relief was filed well beyond the four months restriction of § 52-212a and P.B. § 326 (now 17-4) and even though no substantial change in circumstances or deviation from the guidelines as required by § 46b-86 (a) was alleged.
In upholding the trial court's action Judge Lavery, writing for the Appellate Court, pointed out that courts possess "intrinsic powers", despite the statutory and procedural four month restriction to open and vacate any judgments obtained by fraud, duress or mutual mistake, citing In Re Baby Girl B, 224 Conn. 263, 283, (1992). The Appellate Court then found that the lower court properly vacated the earlier decision on the ground of a mutual mistake due to the format of defendant's financial affidavit. The correction of the mathematical error resulted in compliance with the child support guidelines and, as such, did not constitute an impermissable retroactive modification. CT Page 9930
 VII CONCLUSION AND ORDER
Based upon the testimony offered and the exhibits reviewed in this case and consistent with the holding in the Hill case the court will reopen the judgment entered by Magistrate Ginsberg on August 10, 1992 insofar as the arrearage finding of $15,706.24 is concerned. The court will vacate that finding and find an arrearage due to the State of Connecticut in the amount of $1,225.35 on Corey's account and will find an arrearage of $4,472.00 on Taylor's account for a total arrearage finding in the amount of$5,697.35 due to the State as of August 10, 1992. The court will order an audit of the account by support enforcement to reflect all charges from August 10, 1992 to the date of the audit report and all payments by the respondent for the same period of time. The audit should be performed expediously and the results reported to the successor to the undersigned for whatever action he or she deems appropriate. The matter is continued to October 19, 1998 at 10:00 a.m. for the results of the audit.
BY THE COURT
Wilson J. Trombley Family Support Magistrate