[No. 96-2.    Division Two.    December 17, 1970.]

GEORGE ANNE HALVORSEN, *Appellant,* v. BOYER HALVORSEN *et al., Respondents.*

*Merges, Brain, Youngberg, Kelleher, Allen & Larson, Edwards E. Merges,* and *Jack Youngberg,* for appellant.

*Hoof, Shucklin & Harris* and *Gerald Shucklin,* for respondent Boyer Halvorsen.

*Schweppe, Doolittle, Krug & Tausend* and *Thomas R. Beierle,* for respondent Mary C. Halvorsen.

PEARSON, J.—The plaintiff and defendant[1] were married approximately 30 years before their marital difficulties ended in divorce. During this marriage, the community fortunes increased dramatically as the defendant built a single tug boat into a million-dollar towboat enterprise. During the last years of the marriage, the business centered in southeastern Alaska and defendant spent much of this time there, running the boats. Plaintiff went to Alaska for a short time, but soon decided she preferred to live at Port Madison on Bainbridge Island. Soon after her return to Washington State, plaintiff began consulting a psychiatrist, complaining of depression. Over the years, plaintiff was examined by 10 different doctors and was for short periods a voluntary inpatient at various hospitals. The consensus of nine of the doctors was that plaintiff did indeed suffer fits of depression, but that these were no more than a mild neurosis with which plaintiff was able to cope. The 10th doctor, Dr. Kjaer, disagreed and felt that plaintiff was unable to understand complex matters or assert her own will in negotiation.[2]

At any rate, while she was under psychiatric care, plaintiff, in December, 1963, went to visit the family attorney[3] to

---

[1]Defendant will be used to refer to Boyer Halvorsen, unless Mary Catherine Halvorsen is also mentioned.

[2]Plaintiff's medical record was introduced at trial in its entirety and it establishes this medical disagreement.

[3]James Bryan, Jr. (now deceased).

discuss matters of wills and trusts. Discussion turned to the parties' marital problems and the possibility of divorce. Plaintiff and her attorney began discussions of a property settlement, considering assets and their values. A few months later, in August, 1964, plaintiff had herself admitted to University Hospital in Seattle. In consultations with her doctors, plaintiff arrived at the decision that her mental health would be improved by a divorce. She wrote several letters to the attorney, seeking to implement this decision, including one in which she stated that if the matter were to be contested, she knew she would have to retain counsel, but if her husband agreed to a default divorce, she wished both parties to be represented by the addressee, Mr. Bryan. The latter had in the past represented defendant with reference to both business and personal affairs. Plaintiff also stated in a letter that she would be content if she received $500 per month and assurance that the business would go to one of the parties' two children, Kent Halvorsen.

On September 22, 1964, plaintiff was discharged from the hospital and her medical records show us that she was not depressed and that her doctors regarded her as strong and independent in her interpersonal relations. On September 30, plaintiff and defendant came to Mr. Bryan and had him formally draft the property settlement they had come to. Mr. Bryan, with plaintiff's consent, had discussed her case a few days earlier with her attending physician and had been told that plaintiff was mentally capable of going ahead with "simple" as opposed to a "complex" divorce.

The plaintiff obtained a default divorce, which approved the property settlement agreement drawn by Mr. Bryan and signed by both parties. She then moved to Oregon. Later, defendant married his present wife, Mary Catherine, and they have since had two children. Some 2½ years after the divorce, plaintiff brought the instant action in "equity" to set aside the property settlement on the basis of fraud and mental incompetence, asking the trial court to redistribute the former community property.

■ The trial court found that the plaintiff was of sound mind and capable of making a voluntary and knowing decision regarding property and her rights therein. The court also found that plaintiff had adequate representation in the negotiations leading to the settlement and in the divorce action itself. Applying the rule in *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959), we cannot upset these findings. Plaintiff argues that the uncontradicted medical testimony is contrary to the findings. We cannot agree. Plaintiff's entire medical record was in evidence in this case. Defendant presented an expert psychiatric witness whose testimony supported the finding of mental competency to agree to the settlement. The trial court's resolution of this factual disagreement was consistent with one of the expert's views and not the other's. We cannot upset this determination.

Likewise, we cannot upset the trial court's determination of the adequacy of her representation at the time of and prior to the divorce. The practice of one attorney's representing both parties to a divorce can, of course, lead to difficulties such as plaintiff alleges are present in the instant case. Here, however, attorney Bryan's conduct appears to us to be proper under the circumstances. The record shows that plaintiff, after it was explained to her that she could obtain independent counsel and ought to do so if she felt any conflict of interest existed, chose to have Mr. Bryan represent her in what she appears to have regarded as an amicable division of the marital estate. She knew that the estate contained substantial assets. She spelled out her desires and got what she wanted, at least according to her later written expressions of satisfaction to Mr. Bryan.

■ We cannot say that whenever a party to a divorce has been under the care of a psychiatrist, he must have independent counsel as a matter of law. Whether an attorney can in good conscience represent both parties to an agreement is preeminently a question of his own conscience and whether there is an apparent conflict of interest. If his

decision is challenged in court, the matter is a fact question to be determined by looking to the reasonableness of the activity, under the whole circumstances of the case.

Here Mr. Bryan told plaintiff she should get independent counsel if the matter were to be contested. He said he would have represented neither of the parties in a contested divorce. He inquired of plaintiff's psychiatrist and was told she could successfully cope with a divorce. Only then, and at plaintiff's request and to her apparent satisfaction, did he function in the case. We cannot find any unreasonable behavior on Mr. Bryan's part. *See Peste v. Peste,* 1 Wn. App. 19, 459 P.2d 70 (1969).

This brings us to the second major problem presented by this factual pattern. In a default divorce, as in contested divorces, we think that the statute, RCW 26.08.110, requires that the court exercise its discretion in division of the marital estate. We must here determine whether the trial court abused its discretion in accepting the property settlement proposed by the parties. As an initial proposition, we restate the rule that the trial court's disposition of property will not be disturbed on appeal, absent a showing of manifest abuse of discretion. *Mayo v. Mayo,* 75 Wn.2d 36, 448 P.2d 926 (1968). Whether or not there has been an abuse of discretion rests on whether this court can say no reasonable man would take the view adopted by the trial court. *Rehak v. Rehak,* 1 Wn. App. 963, 465 P.2d 687 (1970). The economic condition of the parties as a result of the decree is a paramount consideration in evaluation of it. *See DeRuwe v. DeRuwe,* 72 Wn.2d 404, 433 P.2d 209 (1967).

In the case at bar, three different appraisals of the values of property in the estate were offered. Under one of these systems, plaintiff received approximately one-half of the estate. This accounting was supported by the testimony of a qualified appraiser. The testimony of other witnesses indicated various other valuations of property and other percentage distributions. We cannot say, in light of this conflicting testimony, that the trial court in the divorce action

manifestly abused its discretion in accepting the property settlement proposed by the parties. It is undisputed that both parties were left with substantial property and plaintiff was left with permanent alimony. Under these circumstances, we believe, following the Thorndike rule, there was substantial evidence to support the trial court's finding of no fraud or overreaching in the instant case.

Even if we were not convinced that the trial court in the divorce case properly exercised its discretion, we think that the result we reach would follow from the rationale in *Peste v. Peste, supra.* In that case, we sought to advance the strong policy favoring finality in property settlement agreements. *See* RCW 26.08.110. Parties often, as they have here, base their conduct on a property settlement. New families, new business and other ventures are begun in reliance on the finality of such decrees. The court is properly reluctant to upset such arrangements, absent a strong showing that justice requires such a drastic step. In *Peste,* we empolyed reasoning based on a knowing and voluntary waiver of community property rights. We believe that this rationale could be employed here, were the failure to show any abuse of discretion on the part of the trial court not dispositive. Under either rationale, plaintiff here received what she desired. She voluntarily and competently consented to the settlement and so she cannot now be heard to object to her own action.

Affirmed.

ARMSTRONG, C. J., and PETRIE, J., concur.

Petition for rehearing denied January 18, 1971.

Review denied by Supreme Court March 1, 1971.