NADINE O. MONROE *v.* FLOYD R. MONROE

COTTER, C. J., BOGDANSKI, PETERS, PARSKEY and SPONZO, Js.

174

Argued January 2—decision released March 27, 1979

*Nadine O. Monroe,* pro se, the appellant (plaintiff).

*Thomas B. Wilson,* for the appellee (defendant).

PETERS, J. The plaintiff, Nadine O. Monroe, and the defendant, Floyd R. Monroe, were married in 1956 and divorced in 1973. Several years later the plaintiff initiated the present proceedings to vacate the judgment of divorce. The plaintiff filed two motions, one in January, 1978, and another in March, 1978, claiming that the state referee who rendered the decree of dissolution of her marriage lacked the jurisdiction to do so. In response to each motion, the defendant countered with a motion to erase because the plaintiff's motions were not filed within the term of court in which the judgment of divorce had been rendered, and were hence untimely. The trial court denied the motions of the plaintiff and granted the motions of the defendant. The plaintiff thereupon appealed each denial to this court, and we consolidated the two appeals.

The basic facts established by the record below are as follows: The plaintiff initiated an action for separation or divorce in 1969. As amended in 1973, the complaint charged the defendant with intolerable cruelty, wilful desertion, and adultery, and sought child custody and financial relief. The defendant, after reference of the case to a state referee, consented to having the matter heard as uncontested on the plaintiff's complaint. A hearing was held by the referee on February 6, 1973, in accordance with this understanding. Both the plaintiff and the defendant were present in the courtroom; each was represented by counsel; neither was called upon to testify. Counsel for the plaintiff presented the plaintiff's amended complaint and proposed the terms of a stipulated settlement to be incorporated in the judgment file. Although the stipulation for settlement was in writing, neither the plaintiff nor the defendant had signed it. Counsel informed the court that "each aspect" of the settlement had been discussed by each counsel with each client and that each was willing to accept its terms if the court found the settlement to be fair and reasonable. The court granted the plaintiff a divorce on the ground of desertion and incorporated the stipulated settlement into its judgment decree. Neither party ever appealed from the rendition of this judgment. The defendant subsequently remarried.

The plaintiff's motions to open the judgment[1] challenge the subject matter jurisdiction of the referee to render the judgment of divorce. The motion filed January 17, 1978, claims that there were juris-

---

[1] The phrase "open a judgment" is used synonymously with the phrase "vacate a judgment." See *Poneleit* v. *Dudas*, 141 Conn. 413, 416, 106 A.2d 479 (1954).

dictional flaws in the actual reference of her case to the referee, pursuant to General Statutes § 52-434, while the motion filed March 20, 1978, claims that the referee lacked constitutional power, despite § 52-434, to render final judgments in any case. We will consider these claims in reverse order.

As a preliminary matter, in view of the defendant's continued insistence that these claims were not properly before the trial court, and are not now properly before this court, we should clarify our own jurisdiction to hear this case. The defendant argues that the orders below are not appealable (1) because they do not constitute final judgments and (2) because they are untimely, since they were not filed within the term of the court at which the judgment of divorce was rendered. We find neither of these arguments persuasive.

This court has had numerous occasions to define finality of judgments. A recent comprehensive statement identifies a variety of criteria: "One test is whether the order or action terminates a separate and distinct proceeding. *Dewart* v. *Northeastern Gas Transmission Co.,* 139 Conn. 512, 514, 95 A.2d 381. Another test lies in the effect of an order 'as concluding the rights of some or all of the parties'; *Banca Commerciale Italiana Trust Co.* v. *Westchester Artistic Works, Inc.,* 108 Conn. 304, 307, 142 A. 838; *Gores* v. *Rosenthal,* 148 Conn. 218, 221, 169 A.2d 639; and finally, if the rights of the parties are concluded so that further proceedings cannot affect them, then the judgment is final. *State* v. *Fahey,* 146 Conn. 55, 57, 147 A.2d 476; *Watson* v. *Howard,* 138 Conn. 464, 467, 86 A.2d 67; *Northeastern Gas Transmission Co.* v. *Brush,* 138 Conn. 370, 373, 84 A.2d 681." *Prevedini* v. *Mobil Oil Corpora-*

*tion,* 164 Conn. 287, 292, 320 A.2d 797 (1973). Whichever of these tests is employed, it is clear that the orders denying motions to open a judgment are appealable judgments. *Zingus* v. *Redevelopment Agency,* 161 Conn. 276, 281, 287 A.2d 366 (1971).

It is equally clear that these appeals are not precluded by the common-law rule, recognized in *Cichy* v. *Kostyk,* 143 Conn. 688, 690, 125 A.2d 483 (1956), that ordinarily limits the power of a court to open, modify, or vacate its judgments "to the term of court at which the original judgment was rendered." The *Cichy* rule limits the opening of judgments that are arguably improper or erroneous. Significantly, *Cichy* itself permitted belated exercise of jurisdiction with the consent of the parties. *Cichy* does not address the timeliness of attacks on judgments that are alleged to be not merely voidable but void. The plaintiff's motions challenge the power of the tribunal that adjudicated her case to hear and to determine the cause of action presented to it. *Brown* v. *Cato,* 147 Conn. 418, 422, 162 A.2d 175 (1960). A challenge to subject matter jurisdiction, an allegation that a judgment is void, "can be raised at any time . . . and the lack thereof cannot be waived." *LaBow* v. *LaBow,* 171 Conn. 433, 440, 370 A.2d 990 (1976); *Connecticut Steel Co.* v. *National Amusements, Inc.,* 166 Conn. 255, 263, 348 A.2d 658 (1974); Maltbie, Conn. App. Proc. § 45.

The plaintiff's appeals from the orders of the trial court are therefore both jurisdictionally appropriate and timely. This conclusion does not mean that collateral attacks on judgments are favored. On the contrary, every presumption favors the jurisdiction of a court; *Six Carpenters, Inc.* v. *Beach Carpenters Corporation,* 172 Conn. 1, 6, 372 A.2d 123 (1976);

and the regularity of its processes. *Jensen* v. *Nationwide Mutual Ins. Co.*, 158 Conn. 251, 260, 259 A.2d 598 (1969). The modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal. James & Hazard, Civil Procedure (2d Ed. 1977) § 13.16, esp. 695–97; Restatement (Second), Judgments § 15 (Tent. Draft No. 5 1978). We turn now to the merits of the plaintiff's allegations.

The more wide-ranging of the plaintiff's claims challenges the constitutionality of § 52-434 of the General Statutes.[2] It is argued that this section, which empowers retired judges, upon designation as state referees, to exercise the same powers as the Superior Court, violates article second;[3] article

---

[2] The relevant portion of General Statutes § 52-434 provides: "RETIRED JUDGES AS STATE REFEREES. HEARINGS. COMPENSATION. TRIAL REFEREES. APPOINTMENT OF ADDITIONAL REFEREES. Each judge of the supreme court, each judge of the superior court and each judge of the court of common pleas who ceases or has ceased to hold office because of retirement other than under the provisions of section 51-49 shall be a state referee during the remainder of his life. The superior court may, with the written consent of the parties or their attorneys, refer any case pending before such court in which the issues have been closed to such a state referee who shall have and exercise the powers of the superior court in respect to trial, judgment and appeal in such case."

[3] Conn. Const., art. II provides: "[Distribution of powers.] The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."

fifth, §§ 1, 2, and 6;[4] and article first, § 1, of the Connecticut constitution.[5] The plaintiff maintains that it is unconstitutional to permit judges who must retire at the age of seventy thereafter to exercise judicial power exclusively vested in constitutional courts. This argument relies on the doctrine of separation of powers recently restated in cases such as *State* v. *Clemente,* 166 Conn. 501, 353 A.2d 723 (1974), and *Adams* v. *Rubinow,* 157 Conn. 150, 251 A.2d 49 (1968). These cases are, however, inapposite because they concern legislative enactments that lack specific constitutional sanction. Section 52-434 was amended, in 1967, to conform to the enabling provision of article fifth, § 6, of the 1965 Connecticut constitution, namely: "No judge or justice of the peace shall be eligible to hold his office after he shall arrive at the age of seventy years,

---

[4] Conn. Const., art. V, §§ 1, 2, and 6 provide: "[Courts.] Sec. 1. The judicial power of the state shall be vested in a supreme court, a superior court, and such lower courts as the general assembly shall, from time to time, ordain and establish. The powers and jurisdiction of these courts shall be defined by law.

[Supreme and superior court judges, appointments, terms, removal.] Sec. 2. The judges of the supreme court and of the superior court shall, upon nomination by the governor, be appointed by the general assembly in such manner as shall by law be prescribed. They shall hold their offices for the term of eight years, but may be removed by impeachment. The governor shall also remove them on the address of two-thirds of each house of the general assembly.

[Age limitation, exception.] Sec. 6. No judge or justice of the peace shall be eligible to hold his office after he shall arrive at the age of seventy years, except that a chief justice or judge of the supreme court, a judge of the superior court, or a judge of the court of common pleas, who has attained the age of seventy years and has become a state referee may exercise, as shall be prescribed by law, the powers of the superior court or court of common pleas on matters referred to him as a state referee."

[5] Conn. Const., art. I, § 1 provides: "[Equality of rights.] Sec. 1. All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

except that a chief justice or judge of the supreme court, a judge of the superior court, or a judge of the court of common pleas, who has attained the age of seventy years and has become a state referee may exercise, as shall be prescribed by law, the powers of the superior court or court of common pleas on matters referred to him as a state referee."

This court has, on several occasions since 1965, reviewed, with approbation, the role of state referees. *Florida Hill Road Corporation* v. *Commissioner of Agriculture,* 164 Conn. 360, 365–66, 321 A.2d 856 (1973), describes the history of the position of state referee and concludes (p. 362) that such a referee "is not a 'judge of the superior court or the court of common pleas' but is sui generis, [and] sits as a special tribunal." See also *Prince* v. *Sheffield,* 158 Conn. 286, 291, 259 A.2d 621 (1969), and *Harbor Construction Corporation* v. *D. V. Frione & Co.,* 158 Conn. 14, 16, 255 A.2d 823 (1969). The state referee system, as a special tribunal, does not encroach upon, and does not unconstitutionally compete with, other constitutional courts. On the contrary, as we noted in *Florida Hill Road Corporation* (p. 367), state referees "serve the very practical purpose of relieving the court's crowded dockets."

In the light of the clear language of the constitution and the consistent construction of the statute in this court, the plaintiff has failed to sustain her burden of demonstrating the unconstitutionality of § 52-434. *State* v. *Olds,* 171 Conn. 395, 411, 370 A.2d 969 (1976); *Wilson* v. *Connecticut Product Development Corporation,* 167 Conn. 111, 114, 355 A.2d 72 (1974); *Kellems* v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973).

The plaintiff claims alternatively that the provisions of § 52-434, even if not per se unconstitutional, were invoked in her case in a manner so fatally defective as to deprive the referee of jurisdiction over the subject matter of her divorce. The relevant portion of § 52-434 empowers a state referee to act when "[t]he superior court . . . with the written consent of the parties or their attorneys, [has] refer[red] any case pending before such court." The plaintiff's motions to open the judgment challenge both the sufficiency of her consent to any order of reference and the existence of a valid order of reference issued by the Superior Court.

The plaintiff's argument concerning her lack of consent to a hearing before a referee is difficult to maintain in light of the express provision of § 52-434 which provides for reference "with the written consent of the parties *or their attorneys.*" (Emphasis added.) The record clearly indicates that the plaintiff was represented by counsel, and that her counsel signed a motion for reference to a state referee. It is hornbook law that clients generally are bound by the acts of their attorneys. *Link* v. *Wabash R. Co.*, 370 U.S. 626, 633–34, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962); *Collens* v. *New Canaan Water Co.*, 155 Conn. 477, 496, 234 A.2d 825 (1967); *Butler* v. *Butler*, 1 Root 275 (Conn. 1791). This court has specifically held, moreover, that objections to an order of reference should be raised by direct appeal, rather than by a collateral attack on a judgment, unless it is necessary to open the judgment to "prevent a miscarriage of justice." *Zingus* v. *Redevelopment Agency*, 161 Conn. 276, 282, 287 A.2d 366 (1971).

There are no facts on the record before us that would warrant a conclusion that there has been a

miscarriage of justice. The plaintiff claims that she was coerced by her attorney into agreeing to the order of reference and into appearing before the referee, but there are no findings of fact to support those allegations. The plaintiff's argument would have us impose upon the defendant, as a condition of defending the finality of a judgment, the burden of establishing that the plaintiff's relationship with her counsel was one of informed consent. This we are not prepared to do.

Although the plaintiff in this collateral attack has not sustained her burden of establishing that the refusal to open the judgment constitutes a miscarriage of justice, the questions indirectly raised by her appeal are not trivial. It may well be time to reconsider the role that lawyers and judges play in the matrimonial cases that appear in ever-increasing numbers before the courts. Analogies drawn from commercial litigation fail to respond adequately to the situation of emotional trauma commonly associated with the irretrievable breakdown of a marriage. In many other areas, this court has become increasingly willing to recognize the reality of emotional trauma. Recently, we have held that recovery, in tort, for unintentionally caused emotional distress, is permissible; *Montinieri* v. *Southern New England Telephone Co.,* 175 Conn. 337, 345, 398 A.2d 1180 (1978); we have recognized loss of conjugal companionship and affection as an element of damages for loss of consortium; *Hopson* v. *St. Mary's Hospital,* 176 Conn. 485, 494–95, 408 A.2d 260 (1979); and we have taken account of acute emotional upset as a factor in weighing criminality of conduct. *State* v. *Elliott,* 177 Conn. 1, 411 A.2d 3 (1979). In many other states, there is a developing case law articulating the right of a

patient to comprehensive consultation, to informed consent, before medical therapy is undertaken. See the well-reasoned discussion, and the full citation of authorities, in *Canterbury* v. *Spence,* 464 F.2d 772 (D.C. Cir. 1972). Furthermore, other courts have held that the fiduciary responsibility of a lawyer to his client, particularly in matrimonial settlements, requires reasonable inquiry into the wishes as well as the objective best interests of the client. Compare *Halvorsen* v. *Halvorsen,* 3 Wash. App. 827, 479 P.2d 161 (1971), with *Ishmael* v. *Millington,* 241 Cal. App. 2d 520, 50 Cal. Rptr. 592 (1966). We should recognize, therefore, that lawyers who represent clients in matrimonial dissolutions have a special responsibility for full and fair disclosure, for a searching dialogue, about all of the facts that materially affect the client's rights and interests. See *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal. 3d 176, 189, 491 P.2d 421 (1971); D. Rosenthal, Lawyer and Client: Who's in Charge, pp. 154–56 (Russell Sage 1974). We do not of course intend to imply that the plaintiff's counsel in her divorce proceedings failed to meet these high standards of professional responsibility. It is, however, noteworthy that the referee who accepted the stipulated divorce settlement and incorporated it into his decree did so completely upon the representations of counsel. Although both parties to the divorce proceedings were present, and despite the court's affirmative obligation to determine whether a settlement agreement is "fair and equitable under all the circumstances"; General Statutes § 46-49, now § 46b-66; the referee made no inquiry whatsoever to ascertain the parties' actual consent to the proposal

before him.[6] Because of the emotionally-laden circumstances under which negotiations about marital dissolutions necessarily take place, reasonable inquiries should be made to ensure, as far as possible, that reasonable settlements have been knowingly agreed upon. Nonetheless, even judicial failure to conduct a searching inquiry into the acceptability of a divorce settlement does not make the subsequent judgment of divorce vulnerable to collateral attack as a miscarriage of justice.

The plaintiff's final claim is that the referee lacked jurisdiction over the subject matter of her divorce because there was no valid order of reference to the referee from the Superior Court. The record discloses only an entry in the jacket of the trial court file, dated June 1, 1972, purporting to represent an order by the Superior Court judge that the case be referred to *Hon. Thomas E. Troland,* trial referee. There is nowhere any order to this effect signed by the Superior Court judge. The record does indicate that the referee was notified, and that, without objection by the parties or their counsel, he conducted the proceedings leading to his rendition of the judgment of divorce.

The absence from the case file of a *signed* order is by no means conclusive evidence on the face of the record that the Superior Court judge never heard or acted upon the motion to refer the case. The record in its totality indicates either that the Superior Court judge overlooked signing his order of

---

[6] Since 1974, the statutory provision governing stipulated settlements in actions for dissolution of marriage or legal separation has expressly required that written stipulations, or oral in-court stipulations, be made by the parties and not by their attorneys. General Statutes § 46-48, now § 46b-51, as amended by Public Acts 1974, No. 74-169, § 6.

reference or that his signed order has been inadvertently misplaced. Such oversights are not jurisdictional defects for the purpose of collateral attack on a judgment. In other cases we have held that jurisdictional facts relating to service of process or to notice are to be conclusively presumed in the case of a domestic court of general jurisdiction. *Lampson Lumber Co.* v. *Hoer,* 139 Conn. 294, 298, 93 A.2d 143 (1952); *Sanford* v. *Sanford,* 28 Conn. 6, 14, 17 (1859). The presumed regularity of process in the Superior Court was therefore sufficient to establish jurisdiction in the referee. The New York Court of Appeals, in a case closely analogous on the facts, has only recently cautioned against overly broad definition of subject matter jurisdiction. In *Lacks* v. *Lacks,* 41 N.Y.2d 71, 359 N.E.2d 384 (1976), that court was asked, on a postjudgment motion, to set aside a final judgment of divorce on the ground of absence of subject matter jurisdiction because of failure to satisfy the statutory durational residence requirement. Chief Judge Breitel upheld the judgment, noting at length the ambiguities inherent in the concept of subject matter jurisdiction. *Lacks* v. *Lacks,* supra, 74–77. A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. Id., 75. Lesser irregularities do not make a final judgment void.

There is no error.

In this opinion the other judges concurred.