[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
A judgment of dissolution of the parties' marriage was entered on August 19, 1987, before F. Freedman, J. At that time the defendant appeared but was not represented by counsel.
The parties had entered into an agreement providing for a division of their property and alimony and support. This agreement had been negotiated between the parties through mediation. In the mediation process the defendant had furnished his 1986 income tax return, and based upon those figures the mediator had recommended amounts for alimony and child support for the parties two children, Carl and Elizabeth, then 10 and 7 CT Page 6889 respectively.
In his financial affidavit the defendant showed gross weekly income of $1154 ($60,000 per year) and net weekly income of $846. In fact the defendant's income for the period January 1, 1987 to August 15, 1987, was a gross weekly income of $3700 ($192,289 per year) and net weekly income of $2530. (see plaintiff's exhibit E).
The defendant omitted any mention of his business in his financial affidavit. If one considers his balance in his bank account at the time (approximately $77,000) (see plaintiff's exhibit F) and the value of his leasehold improvements, biofeedback machine and various equipment, furniture and fixtures, after deducting the $40,000 loans to Bank of Boston. (approximately $17,500) (see plaintiff's exhibit E, schedule C, schedule of documentation), the business had a book value of $94,500.
The defendant completed his financial affidavit in court on August 19, 1987. He is a practicing psychologist with a Phd degree. He opened his practice under the name of New Haven Sleep Disorder Center. The nature of this business is described in defendant's exhibits 1, 2 and 3. He commenced this business in November 1985. While the defendant states that he had no idea of the value of his business or the amount of income that was being received, he withdrew $50,000 cash for a down payment on a condominium he purchased in April 1987 (see $10,000 check in February 1987 and $40,000 check in April 1987 plaintiff's exhibit F). The defendant agrees his affidavit was filled with errors and mistakes. He has stated he did not list his bank accounts because he could not have listed an accurate figure.
It is inconceivable that the defendant had no knowledge that his affidavit was completely inaccurate. It is inconceivable, also, that the defendant could believe his business had no value or that it need not be disclosed. The parties had entered in the mediation process trusting a full and complete disclosure. The plaintiff did not receive a full and complete disclosure.
The following language from Billington v. Billington,220 Conn. 212 at 218 (1991) has applicability in this situation:
 "First, the authorities upon which Varley relied for the "diligence" limitation; F. James, Civil Procedure (195) 11.7, pp. 540-42; note, 36 Ill. L. Rev. 894, 896-97 (1942); Restatement (Second, Judgments 116 (Tent. Draft No. 6, 1979); were drawn primarily from the commercial context, and did not address the special considerations CT Page 6890 that are inherent in litigation over the dissolution of a marriage. Indeed, we have recognized that `[a]nalogies drawn from commercial litigation fail to respond adequately to the situation of emotional trauma commonly associated with the irretrievable breakdown of a marriage.' Monroe v. Monroe, 177 Conn. 173, 182, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S.Ct. 20, 62 L.Ed.2d 14 (1979); see also Grayson v. Grayson, supra, 298. The established principle that due diligence is required in commercial transactions therefore has no applicability in the marital context.
 Furthermore, the diligence requirement is inconsistent with the nature of a marital dissolution case and with the rights and obligations arising out of the marital relationship that it legally terminates. Our Practice Book has long required that `at the time a dissolution of marriage, legal separation or annulment action is claimed for a hearing, the moving party shall file a sworn statement . . . of current income, expenses, assets and liabilities, and pertinent records of employment, gross earnings, gross wages and all other income.' Practice Book 463. The opposing party is required to file a similar affidavit `at least three days before the date of the hearing. . . .' Practice Book 463.
 Our cases have uniformly emphasized the need for full and frank disclosure in that affidavit. `A court is entitled to rely upon the truth and accuracy of sworn statements required by 380 [now 463] of the Practice Book, and a misrepresentation of assets and income is a serious and intolerable dereliction on the part of the affiant which goes to the very heart of the judicial proceeding,' Casanova v. Casanova, 166 Conn. 304, 305, 348 A.2d 668 (1974). `These sworn statements have great significance in domestic disputes in that they serve to facilitate the process and avoid the necessity of testimony in public by persons still married to each other regarding the circumstances of their formerly private CT Page 6891 existence.' Cohen v. Cohen, 11 Conn. App. 241, 247, 527 A.2d 245 (1987); see also O'Bymachow v. O'Bymachow, 12 Conn. App. 113, 118-19, 529 A.2d 747, cert. denied, 205 Conn. 808, 532 A.2d 76 (1987) (defendant entitled to rely on information in plaintiff's financial affidavit); Gelinas v. Gelinas, supra, 175 (recognition of `the need for a full and fair disclosure of information contained in a financial affidavit'); Grayson v. Grayson, supra, 287 (`compliance with the rules concerning the filing of financial affidavits is essential in order for the court to make a reasoned decision with respect to such orders'); Jackson v. Jackson, supra, 188 (`[t]he sworn financial statement of the parties under Practice Book 463 have great significance in domestic disputes'). Thus, the requirement of diligence in discovering fraud is inconsistent with the requirement of full disclosure because it imposes on the innocent injured party the duty to discover that which the wrongdoer already is legally obligated to disclose.
 Moreover, in Monroe v. Monroe, supra, we referred to the requirement of full and frank disclosure between attorney and marital client. `[L]awyers who represent clients in matrimonial dissolutions have a special responsibility for full and fair disclosure, for a searching dialogue, about all of the facts that materially affect the client's rights and interests.' Id., 183. In Baker v. Baker, 187 Conn. 315, 322, 445 A.2d 912
(1982), we imposed this requirement of honest disclosure between the litigating parties and the court. It is a logical extension of those precedents to require such full and frank disclosure as well between the marital litigants themselves.
 This principle of complete disclosure is consistent with the notion that `the settlement of a marital dissolution case is not like the settlement of an accident case. It stamps with finality the end of a marriage. `Marriage is a coming together for better or worse, hopefully enduring, and intimate to the degree of being sacred. It CT Page 6892 is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects.' Griswold v. Connecticut, 381 U.S. 479 486, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Courts simply should not countenance either party to such a unique human relationship dealing with each other at arms' length. Whatever honesty there may, or should, have been during the marriage should at least be required by the court at its end.' Grayson v. Grayson, supra, 299-300 (Borden, J., dissenting).
 We have recognized, furthermore, in the context of an action based upon fraud, that the special relationship between fiduciary and beneficiary compels full disclosure by the fiduciary. See Pacelli Bros. Transportation, Inc. v. Pacelli, 189 Conn. 401, 407-409, 456 A.2d 325 (1983). Although marital parties are not necessarily in the relationship of fiduciary to beneficiary, we believe that no less disclosure is required of such parties when they come to court seeking to terminate their marriage.
 Finally, the principle of full and frank disclosure, with which the diligence limitation is inconsistent, is essential to our strong policy that the `private settlement of the financial affairs of estranged marital partners is a goal that courts should support rather than undermine.' Baker v. Baker, supra, 322; Haves v. Beresford, 184 Conn. 558, 568, 440 A.2d 224
(1981); Lavigne v. Lavigne, 3 Conn. App. 423, 426, 488 A.2d 1290 (1985); Grayson Grayson, supra, 299. That goal requires, in turn, that `reasonable settlements have been knowingly agreed upon.' Monroe v. Monroe, supra, 184.
 `Our support of that goal will be effective only if we instill confidence in marital litigants that we require, as a concomitant of the settlement process, such full and frank disclosure from both sides, for then they will be more willing to forego their combat and to settle their dispute privately, CT Page 6893 secure in the knowledge that they have all the essential information.' Grayson v. Grayson, supra. This principle will, in turn, decrease the need for extensive discovery, and will thereby help to preserve a greater measure of the often sorely tried marital assets for the support of all of the family members.
 Although we recognize the need for finality of litigation and stability of judgments, the considerations we have discussed sufficiently outweigh those interests of finality and stability in the marital litigation context so as to require abandonment of the diligence requirement. We believe that the need for finality and stability is adequately protected by the remaining limitations upon the granting of relief from fraud. See Varley v. Varley, supra.
The defendant denies fraud.
Fraud was defined in Billington as follows:
 "Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed. Alexander v. Church, 53 Conn. 561, 562, 4 A. 103 (1886) quoting T. Cooley, Torts p. 474. The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. Maturo v. Gerard, 196 Conn. 548, 587, 494 A.2d 1199
(1985); Miller v. Appleby, 183 Conn. 51, 54-55, 438 A.2d 811 (1981). A marital judgment based upon a stipulation may be opened if the stipulation, and thus the judgment, was obtained by fraud. Kenworthy v. Kenworthy, 180 Conn. 129, 131, 429 A.2d 837
(1980). `The power of the court to vacate a judgment for fraud is regarded as inherent and independent of statutory provisions authorizing the opening of judgments; hence judgments obtained by fraud may be attacked CT Page 6894 at any time.' Id.
 `In Varley v. Varley, supra, 4, we imposed four limitations on the granting of relief from a marital judgment secured by fraud: `(1) There must have been no laches or unreasonable delay by the injured party after the fraud was discovered. (2) There must have been diligence in the original action, that is, diligence in trying to discover and expose the fraud. (3) There must be clear proof of the perjury or fraud. (4) There must be a substantial likelihood that the result of the new trial will be different.' We reiterated those four limitations in Jucker v. Jucker, supra, 677. The Appellate Court has applied these limitations as well. See Gelinas v. Gelinas, 10 Conn. App. 167, 174, 522 A.2d 295, cert. denied, 204 Conn. 802, 525 A.2d 965 (1987); Grayson v. Grayson, 4 Conn. App, 275, 286, 494 A.2d 576 (1985); Jackson v. Jackson, 2 Conn. App. 179, 189, 478 A.2d 1026 (1984); but see Greger v. Greger, supra, 599-600 (express finding of fraud on court required that judgment be opened without regard to four limitations). In this case, we are concerned only with the second of these limitations, namely, that the party seeking to open the judgment exercised diligence in the original action in order to discover and expose the fraud. We are persuaded that the time has come to abandon that limitation." (Billington v. Billington, 230 Conn. 212, 217-218 (1991)
The court finds:
1. A false representation was made as a statement of fact.
2. The statement was untrue and known to be so by the defendant.
3. The statement was made with the intent of inducing the plaintiff's reliance thereon.
4. The plaintiff relied on the statement to her detriment.
5. There has been fraud in this case.
This matter shall be set down for further proceedings to prove the other necessary elements for reopening the judgment. CT Page 6895
The plaintiff claims that to prove that there is a substantial likelihood that the result of a new trial will be different that she should be able to offer evidence of fault, i.e. the cause for the . . . dissolution of the marriage since it is one of the factors of 46b-81 and 46b-82 of the General Statutes, citing Jackson v. Jackson, 2 Conn. App. 179 (1983). In the case at bar, based upon the financial figures shown, the court can find that there is a substantial likelihood that the result of a new trial will be different. The plaintiff's burden of proof is that there is a substantial likelihood that the result of a new trial will be different. That does not mean a certainty nor, indeed, a probability. The plaintiff has sustained that burden upon the financial figures alone and evidence of fault is not necessary in this proceeding.
The clerk shall notify counsel as to a date for further proceedings to establish requirement #1 of Varley.
EDGAR W. BASSICK, III, JUDGE