[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION TO REOPEN AND CORRECT
The plaintiff's motion to reopen and correct was submitted to the court on the record, the pleadings, a stipulation of facts and briefs and oral argument of counsel.
The court finds the following relevant facts. On October 22, 1992, the plaintiff appeared and testified upon her complaint for an uncontested dissolution before the trial court (Mihalakos, J.). The defendant was not present, but his attorney was. Counsel presented to the court a comprehensive and detailed separation agreement dated October 22, 1992 and signed October 22, 1992 by the plaintiff, and on October 21, 1992 by the defendant. To that agreement was annexed a Schedule B ("first Schedule B") which was made a part of the court file and which appears to be an insurance policy endorsement listing various items of personal property. This first Schedule B contained strikeouts and some handwritten notations by the plaintiff, and when read together with paragraph VII G of the separation agreement CT Page 4892 presented to the trial court on October 22, 1992, provided for a certain valuable ruby ring to be awarded to the plaintiff. The ring was insured for $6,850 and worth in the area of $3,000, and was to be counted toward her share of the property distribution.
For reasons relating to a pending trusteeship transfer awaiting completion, the trial court did not enter a decree on October 22, 1992, but took the papers. The clerk's record of the judgment file is dated, however, October 22, 1992, with a line through that date, and the date November 5, 1992 written above it. The judgment file recites that a decree was entered on the ground of irretrievable breakdown, and orders of joint custody, child support and other financial orders, including the notation: "Schedule for jewelry (to) wife, except paragraph 7."
On November 5, 1992, counsel again appeared before Judge Mihalakos, informed him that the trusteeship transfer was concluded and he entered the decree. At that time, neither party was personally present and a handwritten Schedule B was filed ("second Schedule B") which was signed by both counsel. This second Schedule B provided that the ruby ring would be awarded to the defendant husband and not counted toward his share of the property distribution, and thus is contradictory to the first Schedule B. The plaintiff's counsel had attempted to talk to her client several times on November 5 by telephone but was unable to do so. The parties did not provide the court with transcripts of the October 22 or November 5 proceedings before the trial court, but agreed that there were no specific references to the jewelry or the ruby ring.
The husband did not review or read the first Schedule B at or before the October 22 hearing and the wife did not review or read the second Schedule B at or before the November 5, 1992 hearing. When the contradiction came to the wife's attention, she promptly filed the motion to open the judgment.
It is axiomatic that there must be a meeting of the minds of the parties to a contract. It has long been the practice in Connecticut to approve judgments of divorce in an uncontested proceeding based on an agreement of the parties. "With. . .judicial supervision, private settlement of the CT Page 4893 financial affairs of estranged marital partners is a goal that courts should support rather than undermine." Baker v. Baker, 187 Conn. 315, 322 (1982).
Under our statutes, a court has an affirmative obligation, in divorce proceedings, to determine whether a settlement is fair and equitable under the circumstances. General Statutes 46b-66.
"The presiding judge has the obligation to conduct a searching inquiry to make sure that the settlement agreement is substantially fair and has been knowingly negotiated." Monroe v. Monroe, 177 Conn. 173, 183-184, cert. denied, 444 U.S. 801 (1979). This court must presume that the trial court did so when the plaintiff testified on October 22, 1992, and the separation agreement and the first Schedule B was presented to it, and there is nothing in the record to the contrary.
When counsel reappeared on November 5, 1992, the parties were not present, and no further inquiry was made by the court. Whether a judgment rendered pursuant to an agreement was obtained without the consent of one of the parties is a question of fact for the trial court. Verissimo v. Verissimo, 3 Conn. App. 222, 225 (1985). The second Schedule B was signed by plaintiff's counsel as a result of inadvertence or mistake, and thus cannot constitute the plaintiff's consent to the agreement upon which the decree of November 5, 1992 rests. The court further finds that the ruby ring has substantial monetary and sentimental value, and as the contradiction between the two schedules could cause an asset shift of approximately $3,000, its disposition therefore was an important and material element of the agreement. In this light, the importance of the trial court's searching inquiry into the understanding by the parties of their agreement cannot be overemphasized.
This is especially so in the context of the emotionally laden circumstances under which marital negotiations take place. As noted, this inquiry was frustrated by the wife's failure to appear in court on November 5, 1992 and the husband's failure to appear in court on either October 22, 1992 or November 5, 1992.
An agreement in a dissolution action is intended to CT Page 4894 be a total integration of the terms of the parties' settlement, and as there was no consent by the plaintiff to a material provision of the agreement upon which the judgment was based, the judgment cannot stand.
"It is a well-established general rule that even a judgment rendered by the court upon the consent of the parties, which is in the nature of a contract to which the court has given its approval can subsequently be opened without the assent of the parties if it is shown that the stipulation and hence the judgment, was obtained by fraud, in the actual absence of consent, or by mutual mistake. Kenworthy v. Kenworthy, 180 Conn. 129, 131 (1980) (emphasis added).
The plaintiff first urged that the judgment be reopened only as to the distribution of the jewelry, then urged that it be opened in toto. The defendant argues that the judgment should not be opened at all, but if it must, then it should only be opened as to the jewelry distribution.
In the particular circumstances and context of this case, the court cannot open the judgment and limit another trial court to the issue of jewelry alone.
"[This] would impede the trial court's ability to weigh the statutory criteria for financial orders to achieve an equitable result. The issues involving financial orders are entirely interwoven. The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." Sunbury v. Sunbury, 210 Conn. 170, 174-175 (1989).
Hence, as there was no consent by the parties to either Schedule B, the judgment is opened and set aside as to the financial, alimony, child support and property dispositions and the case is restored to the docket for a new trial to be ordered on those issues, only. As the lack of consent did not affect the irretrievable breakdown of the marriage or the joint custody of the parties' minor child, there is no basis to open these portions of the decree.
Teller, J. CT Page 4895