******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DEVLIN J., dissenting. The leading Connecticut treatise on mortgage foreclosures observes that "[t]he foreclosure process differs substantially from the more typical form of civil action: Not only can the nature of the judgment vary, [i.e.] strict foreclosure as opposed to a sale, but various interlocutory rulings occur routinely." 2 D. Caron & G. Milne, Connecticut Foreclosures (9th Ed. 2019) § 20-1, p. 32.[1] In the present case, the majority treats the jurisdictional attack on the judgment by the self-represented defendant Achyut M. Tope[2] as collateral, declines to consider it and affirms the judgment of the trial court. I do not see the attack as collateral but, rather, as direct. Moreover, the attack has merit because there can be little doubt that, in the trial court, the plaintiff, The Bank of New York Mellon, did not prove its authority to enforce the note at issue in this case. I would therefore remand the case to the trial court so that an evidentiary hearing can take place to determine the plaintiff's standing. Accordingly, I respectfully dissent.

"A collateral attack is an attack upon a judgment, decree or order offered in an action or proceeding other than that in which it was obtained, in support of the contentions of an adversary in the action or proceeding . . . ." (Internal quotation marks omitted.) *Warner* v. *Brochendorff*, 136 Conn. App. 24, 32 n.7, 43 A.3d 785, cert. denied, 306 Conn. 902, 52 A.3d 728 (2012). This definition of collateral attack has been applied in a number of cases. See, e.g., *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 97, 616 A.2d 793 (1992) (in zoning enforcement action, company challenged validity of condition attached to permit issued three years prior by planning and zoning commission); *Rider* v. *Rider*, 200 Conn. App. 466, 477, 239 A.3d 357 (2020) (in quiet title action, plaintiff challenged validity of prior Probate Court order appointing plaintiff's brother as conservator for their father); *Federal National Mortgage Assn.* v. *Farina*, 182 Conn. App. 844, 846, 191 A.3d 206 (2018) (in summary process action, defendant challenged validity of prior mortgage foreclosure judgment); *Warner* v. *Brochendorff*, supra, 27–28 (in action to foreclose judgment lien, defendant attacked validity of underlying judgment); *Morris* v. *Irwin*, 4 Conn. App. 431, 434, 494 A.2d 626 (1985) (in declaratory judgment action, plaintiff sought to challenge two and one-half year old marital dissolution judgment).

Connecticut cases have also used the term "collateral attack" in situations in which the attack was made in the same case but, due to the passage of time, the judgment has become final and is beyond the jurisdiction of the court to open. See, e.g., *Sousa* v. *Sousa*, 322 Conn. 757, 763, 143 A.3d 578 (2016) (defendant sought to

open and vacate modified marital dissolution judgment four years after modification); *In re Shamika F.*, 256 Conn. 383, 398–99, 773 A.2d 347 (2001) (in appeal from termination of parental rights proceeding, father sought to challenge order of temporary custody entered three years prior); *Vogel* v. *Vogel*, 178 Conn. 358, 358–60, 422 A.2d 271 (1979) (plaintiff sought to attack nineteen year old marital dissolution judgment); *Monroe* v. *Monroe*, 177 Conn. 173, 174, 413 A.2d 819 (plaintiff sought to attack marital dissolution judgment five years after judgment was rendered), appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979); *CUDA & Associates, LLC* v. *Smith*, 144 Conn. App. 763, 764, 73 A.3d 848 (2013) (in debt collection case, defendant sought to attack plaintiff's standing twenty-eight months after default judgment was rendered); *Urban Redevelopment Commission* v. *Katsetos*, 86 Conn. App. 236, 237–38, 860 A.2d 1233 (2004) (defendant attacked jurisdiction in condemnation proceeding three years after judgment was rendered pursuant to stipulation), cert. denied, 272 Conn. 919, 866 A.2d 1289 (2005).

In each of the previously cited cases, even those challenging the court's subject matter jurisdiction, the court rejected the collateral attack without considering its merits. The rationale for this approach was first articulated in *Monroe* v. *Monroe*, supra, 177 Conn. 178, in which our Supreme Court stated that "[t]he modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal. James & Hazard, Civil Procedure (2d Ed. 1977) § 13.16, esp. 695–97; Restatement (Second), Judgments § 15 (Tent. Draft No. 5 1978)."

In the present appeal, the majority adopts the plaintiff's position that the defendant's attack on its standing should be considered collateral and rejected in favor of the finality of the foreclosure judgment. The problem with this approach is that the motion to open the judgment in the present case was not made in a separate action, nor was it filed after the trial court lost jurisdiction to act. More specifically, unlike the parties in *Warner*, *Upjohn Co.*, *Rider*, *Farina*, and *Morris*, the defendant in the present case has not challenged the foreclosure judgment in a separate action such as an action for a declaratory judgment or as a defense in a summary process action. In addition, unlike in *Sousa*, *In re Shamika F.*, *Vogel*, *Monroe*, *CUDA & Associates, LLC*, and *Urban Redevelopment Commission*, the trial court in the present case never lost jurisdiction to consider the defendant's claims. Although the case has been pending for several years, it is largely due to various actions by the trial court giving the parties the opportunity to mediate the dispute and the defendant the opportunity to sell the property, and not because the case

had reached a stage beyond which the trial court could not act.

In the present case, the trial court rendered a judgment of foreclosure by sale. With respect to such a judgment, the court's jurisdiction to open and modify the judgment generally ends with the approval of the sale and expiration of the applicable appeal period. See, e.g., *Wells Fargo Bank of Minnesota, N.A.* v. *Morgan*, 98 Conn. App. 72, 79, 909 A.2d 526 (2006); see also 1 D. Caron & G. Milne, supra, § 10-1:2, p. 616 ("[T]he court's jurisdiction to modify a judgment generally ends with the approval of the sale. . . . [This] approval . . . operates to divest the owner of [the] equity of redemption and consequently places the property beyond the power of the court.").[3]

The majority suggests that the defendant's September 28, 2017 motion to open and vacate the judgment of foreclosure by sale was an impermissible collateral attack on the prior judgments entered on November 10, 2014, and November 21, 2016. These judgments, however, were not operative at the time of the defendant's September 28, 2017 motion. Following the entry of the default judgment on November 10, 2014, that judgment was opened, modified, and reentered twice; once on January 26, 2015, by the court, *Ecker*, *J.*, and again on September 21, 2015, by the court, *Avallone*, *J.* Additionally, Judge Avallone opened and vacated the judgment on April 11, 2016. Thereafter, the plaintiff moved for entry of judgment of strict foreclosure. Pursuant to this motion, on November 21, 2016, Judge Avallone rendered a judgment of foreclosure by sale, which also was twice opened and reentered—first on April 17, 2017, and again on July 3, 2017. In each instance, the order stated: "JUDGMENT OF FORECLOSURE BY SALE ORDERED REOPENED, MODIFIED AS FOLLOWS, AND REENTERED . . . ."[4]

On September 28, 2017, the defendant filed a motion to open and vacate the judgment asserting that the plaintiff lacked standing to bring the action. The operative judgment at the time the defendant filed this motion was the judgment rendered by Judge Avallone on July 3, 2017, because the earlier judgments had all been superseded by orders issued by the court opening and reentering the judgment. See *Coxe* v. *Coxe*, 2 Conn. App. 543, 547, 481 A.2d 86 (1984) ("when a court opens a judgment of sale to change the sale date . . . the modified judgment . . . becomes the only valid judgment in the case"). Because the defendant filed this motion two months and twenty-five days from the July 3, 2017 entry of judgment, well within the four month limit on the court's authority to open judgments under General Statutes § 52-212a,[5] the trial court clearly had authority to consider the motion and, in fact, did consider it; on October 17, 2017, the court, *Hon. Thomas J. Corradino*, judge trial referee, denied the motion. In

support of its denial of the motion, the court ruled that, as the holder of the note, the plaintiff had standing to foreclose the mortgage. On appeal, the defendant challenges that ruling. This situation is completely distinguishable from cases in which a judgment is attacked in a separate proceeding or long after the rendering court lost jurisdiction, because the defendant's motion to dismiss was a direct attack on the operative judgment.

Considering the attack as direct and therefore within the traditional rule—that subject matter jurisdiction can be challenged at any time, even on appeal—is in accord with other cases from this court that are procedurally comparable to the present case. For example, in *Deutsche Bank National Trust Co.* v. *Thompson*, 163 Conn. App. 827, 830, 136 A.3d 1277 (2016), the plaintiff, on August 18, 2009, filed a motion for default for failure to plead and a motion for judgment of strict foreclosure. Due to, inter alia, an intervening foreclosure mediation effort, the trial court did not render judgment until September 16, 2013. Id. Thereafter, the defendant filed a bankruptcy petition and, on August 22, 2014, after the bankruptcy stay was lifted, the plaintiff filed a motion to open the judgment and reset the law days. Id. This motion was granted by the court on September 22, 2014, after which the defendant appealed. Id. On appeal, for the first time and one year after the original judgment, the defendant challenged the plaintiff's standing and the court's subject matter jurisdiction. Id., 830–31. This court considered the claim on its merits, noting that "subject matter jurisdiction . . . can be raised by any of the parties, or by the court sua sponte, at any time"; (internal quotation marks omitted) id., 831; and that, "because standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to waiver . . . ." (Internal quotation marks omitted.) Id., 832. Finding that the plaintiff had not established its standing, this court remanded the case for further proceedings. Id., 836.

Thus, despite the significant passage of time and various intervening events such as foreclosure mediation and bankruptcy in *Deutsche Bank National Trust Co.*, the defendant's claim challenging the plaintiff's standing was not dismissed as a collateral attack on a final judgment. To the contrary, this court considered the merits of the jurisdictional claim. In my view, the defendant's claims in the present case should be considered on the merits as well.

I now turn to the merits. The defendant asserts that the court lacked subject matter jurisdiction because the plaintiff lacked standing due to the fact that it was not the holder of the note and not otherwise entitled to enforce the note. "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she]

has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [When] a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." (Citation omitted; internal quotation marks omitted.) *Equity One, Inc.* v. *Shivers*, 310 Conn. 119, 125, 74 A.3d 1225 (2013).

Generally, in order to have standing to bring a foreclosure action the plaintiff must, at the time the action is commenced, be entitled to enforce the promissory note. *Deutsche Bank National Trust Co.* v. *Cornelius*, 170 Conn. App. 104, 110–11, 154 A.3d 79, cert. denied, 325 Conn. 922, 159 A.3d 1171 (2017). The question, therefore, is whether the plaintiff has the right to enforce the note signed by the defendant as maker and payable to HSBC Mortgage Corporation (USA) (HSBC). "A plaintiff's right to enforce a promissory note may be established under the [Uniform Commercial Code (UCC)]. . . . Under the UCC, a [p]erson entitled to enforce an instrument means [inter alia] (i) the holder of the instrument, [or] (ii) a nonholder in possession of the instrument who has the rights of the holder . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.) *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 319, 71 A.3d 492 (2013).

The UCC defines the "[h]older" of a negotiable instrument as, inter alia, "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession . . . ." General Statutes § 42a-1-201 (b) (21) (A). As the majority aptly explains, the defendant executed a promissory note in the amount of $134,000 payable to HSBC. The note was later endorsed to "JPMorgan Chase Bank, as Trustee." The note was not further endorsed. The note, therefore, is not a bearer note nor is it payable to the person in possession, the plaintiff. To be a holder, the plaintiff would have to be either (1) in possession of a bearer note,[6] or (2) in possession of a note made payable to it. Because, in the present case, the plaintiff possesses a note made payable to JPMorgan Chase Bank, as Trustee, the plaintiff does not meet the UCC definition of a holder.

The issue then becomes whether the plaintiff is a nonholder with the rights of a holder. "A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument . . . . General Statutes § 42a-3-301. . . . The UCC's official comment underscores that a person entitled to enforce an instrument . . . is not limited to holders. . . . A nonholder in possession of an instrument includes a person that acquired rights of a holder . . . under [General Statutes § 42a-3-203 (a)]. . . . Under § 42a-3-203 (b), [t]ransfer of an instrument . . . vests in the transferee any right of the transferor to enforce

the instrument . . . . An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument. General Statutes § 42a-3-203 (a). Thus, there are two requirements to transfer an instrument under § 42a-3-203 (a): (1) the transferor must intend to vest in the transferee the right to enforce the instrument; and (2) the transferor must deliver the instrument to the transferee so that the transferee has either actual or constructive possession." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *J.E. Robert Co.* v. *Signature Properties*, *LLC*, supra, 309 Conn. 319–20.

In the present case, the defendant asserts that the plaintiff has not demonstrated that it is a person entitled to enforce the note. As discussed previously, although the plaintiff has possession of the note, the note is not payable to bearer and has been endorsed to JPMorgan Chase Bank, as Trustee and not further endorsed to the plaintiff. Accordingly, the plaintiff does not meet the UCC definition of a holder set forth in § 42a-1-201 (b) (21) (A), and the trial court's finding that the plaintiff was a holder entitled to foreclose on the note was incorrect.[7] The plaintiff, however, can enforce the note if it can demonstrate that it is a nonholder in possession with the rights of a holder. See General Statutes § 42a-3-301. That, in turn, requires proof that the transferor delivered the note to the plaintiff intending to vest in it the right to enforce the instrument. See General Statutes § 42a-3-301. The defendant claims that there is no proof in the record to establish such a transfer.

In an apparent attempt to establish its right to enforce the note, the plaintiff asks this court to take judicial notice of a purported transfer of trusteeship from JPMorgan Chase Bank to the plaintiff, as set forth in a document contained in the plaintiff's appendix. This document was not submitted to the trial court, and no findings were made regarding its relevance or authenticity. In addition, the document is outside the type of fact judicially noticed by Connecticut courts. See Conn. Code Evid. § 2-1 (c) ("[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) within the knowledge of people generally in the ordinary course of human experience, or (2) generally accepted as true and capable of ready and unquestionable demonstration"). The purported transfer of trusteeship satisfies neither of these conditions. Moreover, it does not appear that the defendant had any opportunity to be heard regarding the admissibility and use of this purported transfer of trusteeship as required by § 2-2 (a) of the Connecticut Code of Evidence.[8] Accordingly, judicial notice of this document would be inappropriate.[9]

At oral argument before this court, the plaintiff argued that *J.E. Robert Co.* v. *Signature Properties*,

*LLC*, supra, 309 Conn. 307, supports its claim of standing. *J.E. Robert Co.*, however, concerned the question of whether a mortgage servicing company had standing to bring a foreclosure action. Id., 310–11. In answering that question, our Supreme Court held that, because the mortgage servicing pooling agreement explicitly gave the servicer the right to enforce the note, the plaintiff had standing. Id., 328–31.

In *Ditech Financial, LLC* v. *Joseph*, 192 Conn. App. 826, 831, 218 A.3d 690 (2019), this court addressed a claim that the plaintiff bank was not the holder of the note and, therefore, lacked standing. Upon concluding that the record did not permit review of the defendant's jurisdictional claim, this court remanded the matter for further proceedings. Id., 836.

In the present case, the trial court, on the record, did examine the original note. At that time, the court stated that the plaintiff was the successor trustee to JPMorgan Chase Bank. There is nothing in the record, however, as to the basis for that statement or what that successor status entailed vis-à-vis the defendant's note. The court made no findings as to the plaintiff's right to enforce the note, which, as discussed, bore only the endorsement to JPMorgan Chase Bank, as Trustee. Nowhere in the record of the trial court is there a finding, one way or the other, that JPMorgan Chase Bank transferred its right to enforce the note to the plaintiff. Where gaps of this nature exist in the record—specifically, gaps relating to documents proving standing or authority to foreclose—this court has consistently held that a case must be remanded for further proceedings. See id.; *Deutsche Bank National Trust Co.* v. *Thompson*, supra, 163 Conn. App. 836; *Deutsche Bank National Trust Co.* v. *Bialobrzeski*, 123 Conn. App. 791, 799–800, 3 A.3d 183 (2010). Because such a gap exists in the present case, I would reverse the judgment and remand the case for a determination of the jurisdictional issue and for further proceedings according to law.

[1] This is one of the reasons why the four month limitation on opening judgments contained in General Statutes § 52-212a is inapplicable to judgments of strict foreclosure. See General Statues § 49-15.

[2] References to the defendant in this dissent are to Tope.

[3] Our Supreme Court has gone even further, concluding that, for purposes of the four month limitation on opening judgments contained in General Statutes § 52-212a, the court's jurisdiction to open a judgment of foreclosure by sale extends to the date the court renders its supplemental judgment distributing the proceeds of the sale. *Citibank, N.A.* v. *Lindland*, 310 Conn. 147, 172, 75 A.3d 651 (2013).

[4] The majority suggests that these actions by the court in opening and modifying the judgment did not affect the operative status of the earlier November 21, 2016 foreclosure judgment. In support of this position, the majority cites to *RAL Management, Inc.* v. *Valley View Associates*, 278 Conn. 672, 899 A.2d 586 (2006). That case, however, dealt with the opening and modification of a judgment that was on appeal and whether such action rendered the appeal moot. Id., 674. The modifications in the present case did not affect a judgment on appeal; but, more importantly, the opinion acknowledges that the opening and modification of a judgment triggers a new four month period under General Statutes § 52-212a. Id., 689. Accordingly, at the time that the defendant in the present case made his standing challenge, the door was still open to modification and the challenge was not col-

lateral.

[5] General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ."

[6] A "[b]earer," as is relevant here, means "a person in possession of an instrument . . . payable to bearer or endorsed in blank." General Statutes § 42a-1-201 (b) (5).

[7] This finding, as well as the position of the servicer of the loan and the plaintiff referenced in the trial court's order, appear to conflate possession of the original note with UCC holder status. Under the circumstances of this case, more is required.

[8] Section 2-2 (a) of the Connecticut Code of Evidence provides: "A party requesting the court to take judicial notice of a fact shall give timely notice of the request to all other parties. Before the court determines whether to take the requested judicial notice, any party shall have an opportunity to be heard."

[9] Even if one took judicial notice of this purported transfer, without further explanation, it is impossible to determine if the document transfers to the plaintiff the right to enforce the defendant's note.